SOCIETE NATIONALE POUR La RE-CHERCHE, La PRODUCTION, Le TRANSPORT, La TRANSFORMATION et La COMMERCIALISATION des HYDROCARBURES, Plaintiff,

v.

GENERAL TIRE AND RUBBER COMPANY et al., Defendants.

No. 76 Civ. 3014.

United States District Court, S. D. New York.

April 13, 1977.

Shearman & Sterling, New York City, for plaintiff.

Milbank, Tweed, Hadley & McCloy, New York City, for defendants General Tire & Rubber Co. and Aerojet-General Corp.

Layton & Sherman, New York City, for defendants Chemical Const. Corp. and Chemico (Africa) Inc., by Robert P. Layton, Daniel J. Brooks, Frederick E. Sherman, New York City, of counsel.

OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

The Societe Nationale Pour La Recherche, La Production, Le Transport, La Transformation Et La Commercialisation Des Hydrocarbures ("SONATRACH"), an Algerian corporation engaged in the production and marketing of the natural gas and petroleum resources of Algeria, hired

the Chemical Construction Corporation ("Chemico") and Chemico (Africa) Incorporated ("Chemico (Africa)") to build a natural gas liquefaction plant in Arzew, Algeria, for a total price of $327,267,000. The April 26, 1971 construction agreement provided for dispute resolution by a three member panel of the International Chamber of Commerce. Chemico, a New York corporation, and Chemico (Africa), a Nevada corporation, have their principal places of business in New York.

Commencing with summer, 1975, SONATRACH complained that Chemico's performance was not in accordance with an agreed upon time schedule. Chemico blamed the delays on Algerian suppliers and subcontractors selected by SONATRACH and on the rising cost of local labor. To substantiate its assertions, Chemico opened its financial books to SONATRACH in June, 1975. In the course of its examination SONATRACH discovered that $15.5 million had been paid by Chemico to several third-parties as commissions for assistance in securing the award of the contract. SONATRACH complained that these monies, which were derived from contract payments, should have been applied to project costs. SONATRACH's extreme displeasure culminated in a November 14, 1975 letter to the ICC initiating arbitration between the parties. On November 18, SONATRACH commenced an action in Algiers to provisionally attach Chemico's assets. Rahmana Zitouni, Presiding Judge of the Commercial Section of the Court of Algiers, granted the requested attachment on November 20, 1975.

SONATRACH, Chemico, and Chemico (Africa) agreed on February 4, 1976 to permit the construction of the liquefaction project to continue despite the pending arbitration. SONATRACH did not designate its choice of arbitrator to the ICC until July 9, 1976.

On July 7, 1976, SONATRACH commenced the instant action against Chemico, Chemico (Africa), General Tire and Rubber Company ("General Tire"), and Aerojet-General Corporation ("Aerojet"). The first cause of action in which Chemico alone is named alleges that SONATRACH was fraudulently induced to enter into the contract in that it was unaware that commission payments would be made. The second and third causes of action asserted against all defendants basically allege fraudulent reimbursement of the commissions. The fourth and fifth causes of action allege interference by Aerojet and General Tire with Chemico's performance under the contract. The sixth seeks repayment of the commissions and the seventh alleges that the facts asserted amount to a conspiracy to restrain trade actionable under Section 1 of the Sherman Act, 15 U.S.C. § 1.

Chemico and Chemico (Africa) now move to stay the action before me pending the ICC arbitration and to dismiss the seventh cause of action. General Tire and Aerojet have joined in these motions. SONATRACH opposes the stay on the ground that the issues raised in this action are not properly part of the ICC arbitration.

The arbitration clause, translated from the original French, reads

"ARTICLE 12—*SETTLEMENT OF DISPUTES*

The present contract shall be interpreted according to the legislation in effect in Algeria on the date of signature of the present contract. Any litigation *deriving from* the contract shall be equitably and definitively settled according to the rules of conciliation and arbitration of the International Chamber of Commerce by three arbiters, each of the parties selecting one arbiter; the third one shall be designated according to the rules and shall be a jurist. The arbiters shall meet in Lausanne (Switzerland) and the languages used shall be French or English, at the choice of each of the parties. They shall be bound by the terms of this contract."

(emphasis added).

The italicized phrase appears as "decoulant du" in the original and literally translates as "flowing from;" it encompasses terms such as deriving from, arising out of,

**1334**

proceeding from, and springing from. (See Roth affidavit). The parties dispute whether this phrase is broad enough to include a claim of fraud in the inducement. *Compare Robert Lawrence Co. v. Devonshire Fabrics,* 271 F.2d 402, 412 (2d Cir. 1959) *with In re Kinoshita & Co.,* 287 F.2d 951, 953 (2d Cir. 1961). This issue involves more than the plain meaning of the words and raises questions of Algerian law. But the parties have not moved to compel arbitration of this claim nor to confirm an award; the only issue raised is whether the action before me should be stayed. Whether under Algerian law the clause encompasses a claim of fraud in the inducement will be left in the first instance to the arbitration panel of the ICC.

■ Assuming *arguendo* that the fraud in the inducement claim is not properly within the scope of the phrase "decoulant du," there still would be no reason to deny a stay. The rationale for permitting a plenary action to proceed prior to arbitration is to allow for a judicial determination of the validity of the agreement to arbitrate. That policy will not be furthered by denying a stay of this action since the plaintiff has already chosen to rely on the arbitration clause by instituting the ICC proceeding prior to commencing this action. The factual assertions which plaintiff first sought to raise in arbitration are the same as the assertions which plaintiff now argues amount to fraud in the inducement and, inferentially, should bar arbitration. Having decided to proceed with the arbitration, the plaintiff cannot now insist on first litigating the validity of the clause.

SONATRACH asserts that since it has appended an antitrust claim to its complaint, a stay pending arbitration is foreclosed. Defendants disagree. In *Lawson Fabrics, Inc. v. Akzona, Incorporated,* 355 F.Supp. 1146, 1149–51 (S.D.N.Y.1973), *aff'd* 486 F.2d 1394 (2d Cir. 1973), I held that a Sherman Act claim was properly arbitrable because the facts indicated an agreement to arbitrate after the controversy arose. Here, however, the scope of the arbitration clause is not readily determinable and requires reference to Algerian law. Further-

more, to permit arbitration by an international tribunal of a Sherman Act claim would be particularly inappropriate considering the public interest in private enforcement of the antitrust laws. These factors, uncertainty as to the scope of the arbitration clause and utilization of a foreign tribunal, were not present in *Lawson.*

■ But this does not end the matter. This Court possesses the inherent power to stay a proceeding pending the outcome of related actions before a different tribunal. *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). A stay pending arbitration on these facts may well result in significant time economies to the parties and this Court. For example, the fourth and fifth causes of action allege interference with Chemico's performance under the contract; if the arbitration panel should conclude that Chemico has fully performed, it may be determinative of the claim. *See Lawson Fabrics, supra,* at 1146–51. *Liquifuels, Inc. v. Hess Oil and Chemical Co.,* 281 F.Supp. 596 (S.D.N.Y.1968). That the interference claims are asserted against those not party to the arbitration does not diminish the importance of these considerations, *id.*; to hold otherwise would be to permit a plaintiff to prevent a stay simply by naming in his complaint a non-signatory to the arbitration.

The Court of Appeals for this Circuit has approved the practice of staying a plenary action pending arbitration regardless of the arbitrability of the claim raised in the plenary action, where the party seeking the stay can demonstrate that he will not hinder the arbitration, that the arbitration will be concluded within a reasonable time; and that the delay will not work an undue hardship on the party opposing the stay. *See Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.,* 339 F.2d 440, 442 (2d Cir. 1964). I have no reason to doubt that the defendants will assist in achieving a speedy disposition of the ICC arbitration. The only hardship to SONATRACH in granting the stay is to thwart its use of the United States courts to obtain discovery in aid of the arbitration. To deny the stay

would be to encourage baseless suits brought by foreign plaintiffs to gain advantage in foreign litigation. State judicial systems have provided methods to assist parties before foreign tribunals to obtain discovery, *see, e. g.* CPLR 328; Peterfreund & McLoughlin, *New York Practice* 1040–42 (1973), and these procedures should not be bypassed.

The motion for a stay pending arbitration is granted. To insure that the parties are not prejudiced by an unreasonable delay in the arbitration, should the arbitration not be completed within six months, the plaintiff may move to vacate the stay. *See Nederlandse-Erts-Tankersmaatschappij v. Isbrandtsen Co.*, 339 F.2d 440, 442 (2d Cir. 1964). The motion to dismiss the seventh cause of action is denied with leave to renew after the stay is vacated.

The case will be placed on the suspense calendar for six months.

SO ORDERED.