**JANMORT LEASING, INC. and Morton C. Kirschbaum, Plaintiffs,**

v.

**ECONO–CAR INTERNATIONAL, INC., Gelco Corporation and Feld Truck Rental, Inc., Defendants.**

**No. 77 C 1936.**

United States District Court, E. D. New York.

Aug. 8, 1979.

Vincenti & Schickler, New York City, by Arnold S. Schickler, Jesse Alan Epstein, New York City, for plaintiffs.

Burns, Jackson, Miller, Summit & Jacoby, New York City, by Lawrence C. Gibbs, Stuart A. Jackson, New York City, for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

In this action alleging antitrust, contract and tort claims, the court is called upon to decide whether plaintiffs are entitled to preliminary injunctive relief and whether certain claims are subject to arbitration. The background facts are as follows:

Plaintiff Janmort Leasing, Inc. ("Janmort"), a New York corporation, is engaged in the rental and leasing of automobiles and trucks in the New York metropolitan area and in the State of Florida pursuant to three franchise agreements with defendant Econo-Car International, Inc. ("ECI"), a Delaware corporation and wholly-owned subsidiary of Gelco Corporation ("Gelco"), a Minnesota corporation with its principal place of business in Eden Prairie. Invoking the court's jurisdiction under 28 U.S.C. §§ 1331 and 1332 (and, presumably, § 1337), Janmort and its president, Morton C. Kirschbaum, have filed a lengthy amended complaint[1] in which they allege that defendants Gelco, ECI and Feld Truck Rental, Inc. ("Feld"), another wholly-owned (and Minnesota-based) Gelco subsidiary, have engaged in conduct proscribed by the Sherman, Clayton and Robinson-Patman Acts

---

1. Kirschbaum first became a party to this lawsuit with the filing of the amended complaint on December 22, 1977. Although defendants have suggested that the addition of Kirschbaum required leave of court under Rule 21, F.R.Civ.P., they have never formally moved against the amended complaint. Accordingly, we have no occasion to determine whether Rule 21, rather than Rule 15(a), governed the amendment, and note only that it is unlikely that permission to add Kirschbaum would have been denied if requested. See *Kaminsky v. Abrams*, 41 F.R.D. 168, 170 (S.D.N.Y.1966). See generally *Hines v. Delta Airlines, Inc.*, 461 F.2d 576, 580 (5 Cir. 1972).

(Count I); breached fiduciary duties owed to Janmort (Count II); tortiously interfered with the contractual relationship between Janmort and ECI (Count IV); and converted rebates and allowances properly due to Janmort (Count VI), all as "part of a plan and scheme directed against the general public" (Count X, ¶ 107). Plaintiffs also claim that ECI fraudulently induced Janmort to enter into the franchise agreements (Count V); exploited its greatly superior bargaining power by compelling Janmort to assent to a series of purportedly unconscionable contract provisions (Count VII); breached its obligations under the three franchise agreements (Count III), including its obligation accurately to bill Janmort for sums due and owing, by virtue of which ECI has been unjustly enriched (Count VIII); and has sought to exact from both plaintiffs usurious interest payments in connection with loans of money and forebearances of ˙debts embodied in the franchise agreements (Count IX). To redress the injuries they claim they have thus sustained, plaintiffs request declaratory and injunctive relief, an award of many millions of dollars in actual and exemplary damages, and reformation of the franchise agreements.

Despite the breadth of the amended complaint, this action arises from—or, in any event, was precipitated by—an unresolved billing dispute which led ECI on July 13, 1977, and again on September 20, 1977, to notify Janmort that its franchise agreements were being terminated. See Schickler Aff. (9/28/77), Exhs. F, J; Amended Compl. at ¶¶ 30a, 31.[2] The original complaint[3] was filed soon thereafter, and on September 30, 1977, Judge Platt granted Janmort's unopposed application for an order temporarily restraining ECI ˙from terminating and requiring it to fulfill its obligations under the three Janmort franchise agreements. The parties have agreed to maintain the *status quo*, as preserved by the temporary restraining order, in order to afford the court an opportunity to rule on plaintiffs' motion for a preliminary injunction and defendants' cross-motion for an order staying proceedings and compelling arbitration. Each will be treated in turn.

*Arbitration*

■ ECI has moved, pursuant to 9 U.S.C. §§ 3 and 4, for an order staying proceedings and compelling plaintiffs to submit their dispute to arbitration in accordance with what ECI claims is the agreement of the parties. Plaintiffs insist, on a number of grounds, that the controversy is not arbitrable and claim that they are entitled, under 9 U.S.C. § 4, to a jury trial of four issues raised by ECI's application for an order compelling them to arbitrate. Our starting point is the firmly established principle that whether a party is "bound to arbitrate, . . . is a matter to be determined by the Court on the basis of the contract entered into by the parties." *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). See *John Wiley & Sons v. Livingston*, 376 U.S. 543, 546–47, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). And where, as here, the contract is one "evidencing a transaction invoking [interstate] commerce," 9 U.S.C. § 2, federal rules of contract construction and interpretation govern. See *Bigge Crane and Rigging Co. v. ˙Docutel Corporation*, 371 F.Supp. 240, 243 (E.D.N.Y. 1973).

As noted above, Janmort is a party to three separate franchise agreements with

---

**2.** All three franchise agreements treat default in payment as cause for termination, but allow the franchisor a grace period, following written notification, in which to cure the default. See Midtown-East agreement at ¶ 9 (3 days); Palm Beach at ¶ 10 (10 days); Bronx-Westchester at ¶ 10 (same). The September 20 notice purport-·ed to "reinstate the July 13 notice of termination, which specifically alluded to the cure provisions. While the significance of these missives is far from clear, defendants now main-tain that nonpayment was the *sole* reason for termination, and that the franchises ˙will be restored—or the terminations withdrawn—should Janmort bring its accounts up to date, see Knight Aff. (filed 1/23/78), at ¶ 20; Driscoll Aff. (filed 1/23/78), at ¶ 7.

**3.** The original seven-count complaint included no claims founded on unconscionability, unjust enrichment or usury.

ECI. The first—the so-called "Midtown-East" agreement—is dated January 13, 1975, and, as originally drawn, gave Janmort the right to operate as an Econo-Car dealer in a portion of midtown Manhattan and at Kennedy Airport in Queens; addenda to this contract have extended Janmort's franchise to include the balance of Manhattan, La Guardia Airport, and Suffolk County. The second agreement, the "Bronx-Westchester" agreement, is dated August 12, 1975, and granted the Econo-Car franchise for the Riverdale area of the Bronx and the cities of Yonkers and Mt. Vernon in Westchester County to Brand Auto Rental, Inc. ("Brand"). On September 23, 1976, Brand assigned its interest in the franchise to Janmort, which in turn accepted the assignment and undertook to perform all obligations imposed by the underlying agreement, although the arrangement presumably did not become effective until December 21, 1976, when ECI gave its consent. Finally, the most recent agreement, the "Palm Beach agreement," was entered into on September 30, 1976, and gives Janmort the right to operate as an Econo-Car dealer in Palm Beach County, Florida. Although the terms of the three agreements are, in most respects, similar, the Palm Beach and Bronx-Westchester agreements—in contrast to the Midtown-East agreement—contain arbitration clauses which, apart from designation of the site of arbitration, recite as follows:

"21. ARBITRATION

It is mutually agreed by the parties hereto that they will submit any controversy or claim arising out of or relating to this Agreement, or the breach hereof, to binding arbitration under the Rules of the American Arbitration Association . . . . Further, the parties hereto agree that they will abide by the provisions and rules of the American Arbitration Association and that any judgment upon any award rendered by the arbitrator may be entered in any court having jurisdiction thereof and all cost[s] [4] and expenses, including reasonable attorney's fees, will be paid by the parties hereto according to said rules."

Palm Beach agreement at 6; Bronx-Westchester agreement at 7. The Palm Beach and Midtown-East agreements and the Bronx-Westchester assignment were all executed by Kirschbaum.

Beginning with the Midtown-East franchise in 1975, Janmort's performance as an Econo-Car dealer was encouraging. Business apparently was good, and plaintiffs claim that Janmort invested substantial sums in the expansion of its New York and Florida facilities. They also assert, however, that throughout "the relationship of Janmort with ECI, Janmort has consistently been the recipient of erroneous and fallacious billing," perhaps partly because of the relatively primitive billing and accounting system utilized by ECI until mid-1977. Kirschbaum Aff. (9/28/77), at 5. It seems that the problem eventually became so acute that on March 23, 1977, Kirschbaum traveled to Coral Gables, Florida, where he met with several officers of ECI in an effort to reach a satisfactory reconciliation of accounts. The venture was something of a success, for the parties not only agreed to a number of changes in assessments and billing practices, but also fixed Janmort's indebtedness for systems fees and supplies at a mutually acceptable figure, $10,828.58. See Kirschbaum Aff., *supra*, at 8–9; Shun Aff. (filed 1/23/78), at ¶ 5; Schickler Aff. (9/28/77), Exh. D (DeNight letter to Kirschbaum, March 25, 1977).

On April 6, 1977, Gelco acquired ECI and installed new management personnel. Bell Aff. (filed 1/23/78), at ¶ 3. According to defendants, the confusion attendant upon this shift in management and upon the transfer of ECI's headquarters from Coral Gables to Minneapolis in early July was responsible for the failure of billings and statements of account thereafter rendered to Janmort to reflect the adjustment that had been made in March between Kirschbaum and ECI's former officers. See Shun Aff., *supra*, at ¶ 13; Gibbs Aff. (filed 1/23/78), at ¶ 4. In any event, ECI contin-

4. The Bronx-Westchester agreement uses the singular.

ued to generate inaccurate statements of account for Janmort's Florida and New York operations (under the March agreement, ECI was to render a single statement for the two New York franchises), and Janmort continued to protest. See Kirschbaum Aff., *supra*, at ¶¶ 7–10; Shun Aff., *supra*, at ¶¶ 10–14.[5] As a result, ECI's records on July 13, 1977, indicated that Janmort was $33,457.54 in arrears, with $16,872.70 overdue for more than 30 days. *Id.* at ¶ 9. It was on that date that ECI first issued notice of Janmort's default and the conditional cancellation of the franchise agreements. *Id.* at ¶ 3.[6] Janmort, through counsel, took vigorous exception to the July 13 pronouncement, and ECI agreed to take no further steps toward termination while the parties attempted to resolve their not inconsiderable differences. See *id.* at ¶ 4; Schickler Aff., *supra*, Exh. L (J. W. Bell mailgram of 7/20/77 to R. Schickler). Unfortunately, the gulf was too wide to span: despite weeks of obviously serious negotiation, Janmort claimed a balance in its favor, as of September 16, 1977, of $10,796.78, see Schickler Aff., *supra*, Exh. E, while ECI insisted that as of September 20, 1977, when it "renewed" the notice of termination, it was due $18,614.85, all but $65.18 for more than 30 days, although Janmort in August had tendered it two checks totalling $11,676.37, see Shun Aff., *supra*, at ¶ 18; Schickler Aff., *supra*, Exhs. O and Q.[7] This lawsuit followed.

■ On a motion to compel arbitration, the court must determine "(1) whether there is an agreement to arbitrate, (2) whether there are arbitrable claims, and (3)

whether there has been a waiver of the right to arbitration." *Bigge Crane and Rigging Co. v. Docutel Corp., supra,* 371 F.Supp. at 243. Each will be treated in turn.

■ Plaintiffs vigorously disclaim any obligation to arbitrate disputes arising out of the Midtown-East franchise or with Gelco and Feld. We agree. Although federal policy strongly favors consensual arbitration, see *Belk v. Allied Aviation Co. of New Jersey,* 315 F.2d 513 (2 Cir.), *cert. denied,* 375 U.S. 847, 84 S.Ct. 102, 11 L.Ed.2d 74 (1963); *Penalver v. Compagnie de Frutiere,* 428 F.Supp. 1070 (E.D.N.Y.1977), it is axiomatic that "[a] written agreement for arbitration is the sine qua non of an enforceable arbitration agreement" under the Arbitration Act. *Garnac Grain Co. v. Nimpex International, Inc.,* 249 F.Supp. 986 (S.D.N.Y. 1966). More accurately stated, the threshold question presented by a motion to compel arbitration is whether the contract between the parties to the controversy embodies a clause providing for arbitration. *Bigge Crane and Rigging Co., supra,* 371 F.Supp. at 243.

As ECI readily concedes, the Midtown-East agreement, in contrast to the Bronx-Westchester and Palm Beach agreements, does not. To avoid this rather substantial obstacle, ECI urges that DeNight's March 25, 1977, letter, memorializing the understanding reached by Kirschbaum and ECI's management two days earlier, see Schickler Aff. (9/28/77), Exh. D, *supra,* and to which Kirschbaum assented, caused the "consolidation" or "merger" of Janmort's two New

---

5. ECI's current credit manager, Ronald M. Shun, takes issue with Kirschbaum's claim, see Kirschbaum Aff. (9/28/77), at 10, that he made repeated oral objections to the post-March statements of account. See Shun Aff. (filed 1/23/78), at ¶¶ 13, 20. Andrew Macaulay, Shun's predecessor, also denies hearing such complaints during his tenure, which ended with ECI's move to Minnesota in July 1977. See Macaulay Aff. (filed 1/23/78), at ¶¶ 8–9.

6. See note 2, *supra.*

7. Although the parties disagree over a number of items, a good deal of their dispute centers upon the proper treatment of two checks—to-

talling $9,960.99—tendered by Janmort to ECI *after* the March 23 agreement was reached and posted on ECI's accounts *before* DeNight's March 25 letter to Kirschbaum. According to plaintiffs, the sum should have been credited against the $10,828.58 balance noted by DeNight; defendants, on the other hand, insist that the latter figure represented the balance of Janmort's indebtedness after the two checks had been credited to its account, a proposition they claim finds support in the provision allowing Janmort to pay off its debt in four monthly installments.

York area franchises. The contention is, however, wholly inconsistent with the text of the letter, which largely concerns the apportionment of Janmort's (and Krischbaum's) New York fleet of rental vehicles, "for the purpose of computing systems fees due ECI," between ECI and Ford Rent-A-Car. There is nothing in the letter to suggest that the parties had in mind anything more substantial than an adjustment of accounts and billing practices, and the final substantive clause—the last in a series of items said to "relate solely to operations in Greater New York"—recites that "[e]xcept as amended by this letter, the agreements between Janmort and ECI shall remain in force and effect." Also unsupported by the record is ECI's subsidiary argument that when Janmort by assignment acquired the Bronx-Westchester franchise it was agreed that Janmort's rights under the Midtown-East agreement—which, according to ECI, Kirschbaum had personally negotiated, see Defs.' Reply Mem. (filed 1/23/78), at 14— would thereby be modified or subordinated (this is really no more than the converse of plaintiffs' equally unpersuasive contention that ECI had led them—meaning Kirschbaum—to believe that the terms of the Palm Beach and Bronx-Westchester agreements would be identical to those of the earlier Midtown-East agreement). Finally, ECI points to no provision in any of the three agreements or any conduct of the parties which "manifest[s] a mutual intent to arbitrate disputes arising out of" the Midtown-East, as opposed to Bronx-Westchester or Palm Beach, agreement. *Tepper Realty Co. v. Mosaic Tile Co.,* 259 F.Supp. 688, 691 (S.D.N.Y.1966).

It is also clear that plaintiffs have never agreed to arbitrate their dispute with Gelco and Feld. Indeed, we do not understand ECI to argue that either defendant can claim the benefit or has assumed the burdens of the agreements between Janmort and ECI. Compare *John Wiley & Sons v. Livingston, supra; Fisser v. International Bank,* 282 F.2d 231 (2 Cir. 1960). See generally *Moruzzi v. Dynamics Corp. of America,* 443 F.Supp. 332, 334 (S.D.N.Y. 1977); *cf. Granger v. Zeeland Transporta-*

*tion, Ltd.,* 191 F.Supp. 359 (S.D.N.Y.1961). Thus, while plaintiffs are free to submit to arbitration their claims against Gelco and Feld, provided the latter consent, the court is without power to require arbitration of those claims, since "arbitration is a creature of contract and . . . one cannot be compelled to arbitrate unless he has agreed to do so." *Midland Tar Distillers, Inc. v. M/T Lotos,* 362 F.Supp. 1311, 1312–13 (S.D. N.Y.1973).

With our inquiry accordingly focused upon the claims associated with the Palm Beach and Bronx-Westchester franchises and against ECI only, we now turn to plaintiffs' demand for a jury trial. Title 9 U.S.C. § 4 provides, in pertinent part, as follows:

"If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. . . . Where such an issue is raised, the party alleged to be in default may . . . demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury . . . ."

Jury trial is plainly not required in every case, however, for Section 4 further provides that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."

The only issues to be tried—whether by the court or to a jury—on an application for an order compelling arbitration are (1) the making of the agreement and (2) the breach of the obligation to arbitrate. See, *e. g., Atlanta Shipping Corp. v. Cheswick-Flanders & Co.,* 463 F.Supp. 614, 617 (S.D.N.Y.1978); *PAS–EBS v. Group Health, Inc.,* 442 F.Supp. 937, 941 (S.D.N.Y. 1977). Plaintiffs have failed to raise either issue. First, "[t]o make out a genuine issue as to the existence of an alleged contract, a party must deny unequivocally the exist-

ence of the contract, and it should offer some evidence to substantiate the denial." *Atlanta Shipping Corp., supra,* 463 F.Supp. at 617. See *Astra Footwear Industry v. Harwyn International, Inc.,* 442 F.Supp. 907, 909 (S.D.N.Y.), aff'd, 578 F.2d 1366 (2 Cir. 1978). Plaintiffs have done neither, and can hardly deny that Janmort, which continues to operate Econo-Car outlets in its various franchise territories, is a party to the Bronx-Westchester and Palm Beach agreements or that those agreements include arbitration clauses. Nor is there any doubt that Kirschbaum—in whatever capacity—executed the Bronx-Westchester assignment and the Palm Beach agreement. It is equally plain that plaintiffs have refused to submit any of their claims to arbitration and have continued to resist ECI's attempts to compel them to do so. Kirschbaum's contention that the "signatory liability" clauses (paragraph 20) of the two agreements are unconscionable and therefore without effect is, like plaintiffs' other claims of unconscionability (discussed more fully below), properly subject to arbitration.

*Waiver*

 Plaintiffs also urge that by appearing in this action, first to oppose their application for preliminary relief (much to its own benefit, since Janmort has agreed to remain "current" on its obligations) and thereafter answering the amended complaint—albeit *after* moving under Title 9—ECI has "waived" its right to invoke the arbitration provisions of the Bronx-Westchester and Palm Beach agreements. Plaintiffs' Mem. (filed 12/23/77), at 28–30; Plaintiffs' Mem. (filed 2/16/78), at 37–39. It is, of course, settled that "[t]o constitute a waiver, a party's resort to the courts must

evidence an intent to relinquish the right to arbitration." *Auxiliary Power Corp. v. Eckhardt & Co.,* 226 F.Supp. 1020, 1022 (S.D.N.Y.1966), citing *McElwee-Courbis Construction Co. v. Rife,* 133 F.Supp. 790, 795 (M.D.Pa.1955); *American Locomotive Co. v. Chemical Research Corp.,* 171 F.2d 115, 121 (6 Cir. 1948). See generally *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1068 (2 Cir. 1972). More important, a defensive claim that the party seeking relief under Section 4 has waived its right to demand arbitration of otherwise arbitrable matter does not implicate Section 2's exception to enforcement[8] and raises neither an issue concerning the "making" of the agreement to arbitrate nor one relating to the *opposing* party's "failure, neglect or refusal" to arbitrate. *World Brilliance Corp. v. Bethlehem Steel Co,* 342 F.2d 362, 364–65 (2 Cir. 1965). Hence where, as here, an arbitration clause is sufficiently broad to encompass a claim of waiver, the claim is to be decided by the arbitrator. *Id.* See also *Auxiliary Power Corp. v. Eckhardt & Co., supra,* 266 F.Supp. at 1022. Accordingly, plaintiffs' demand, pursuant to 9 U.S.C. § 4, for a jury trial is denied.[9]

*Arbitrability*

 That a controversy involves some claims which are not subject to arbitration will not preclude a court from directing arbitration of those claims which are. See *Lawson Fabrics, Inc. v. Akzona, Inc.,* 355 F.Supp. 1146 (S.D.N.Y.), aff'd, 486 F.2d 1394 (2 Cir. 1973). See generally *Black v. Econo-Car International,* 404 F.Supp. 600 (D.Mass.1975). Whether a particular claim is arbitrable ordinarily depends entirely on the agreement of the

---

8. 9 U.S.C. § 2 provides:

"§ 2. Validity, irrevocability, and enforcement of agreements to arbitrate

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration

an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9. It should be noted that ECI first urged, albeit informally, that the dispute was arbitrable when Janmort's TRO motion was heard by Judge Platt. See Hrg. tr. (9/30/77), at 4–6.

parties. Although it is probably fair to say that the party seeking arbitration carries the burden of proof under Section 4, because federal policy strongly favors arbitration, see *Belk v. Allied Aviation Co. of New Jersey, supra,* the federal rule "is to construe arbitration clauses liberally, to find that they cover disputes reasonably contemplated by the language, and to resolve doubts in favor of arbitration." *Bigge Crane and Rigging Co., supra,* 371 F.Supp. at 243. See *International Ass'n of Machinists & Aerospace Workers v. General Electric Co.,* 406 F.2d 1046, 1048 (2 Cir. 1969); *Penalver v. Compagnie de Frutiere, supra,* 428 F.Supp. at 1072 & n. 1.

■■■ As noted above, the twenty-first paragraphs of the Bronx-Westchester and Palm Beach agreements broadly call for arbitration of "any controversy or claim arising out of or relating to this Agreement, or the breach hereof . . . ." For the reasons which follow, we think that under the Arbitration Act this clause is broad enough to require arbitration of the claims asserted by plaintiffs in all but two of the ten counts of their amended complaint, to the extent those claims relate to Janmort's Bronx-Westchester and Palm Beach franchises.

In Count I of their amended complaint, plaintiffs allege that defendants and others have and are engaged in a wide-ranging plot (1) to restrain trade in and to monopolize what might be described as the residual, nationwide market for the rental of motor vehicles at so-called "budget" or "economy" prices, as well as some or all of its product and geographic submarkets, in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2; (2) to induce manufacturers to sell to them on discriminatory terms motor vehicles which they in turn resell on discriminatory terms, in violation of Section 1 of the Robinson-Patman Act, 15 U.S.C. § 13; and (3) to acquire a corporation (ECI) with the effect of substantially lessening competition and tending to create a monopoly in the vehicle rental market and its submarkets, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

■■■ As plaintiffs note, these antitrust claims are not, for reasons of public policy, proper subjects for arbitration, but must ultimately be decided by the court. See, *e. g., American Safety Equipment Corp. v. J. P. Maguire & Co.,* 391 F.2d 821 (2 Cir. 1968). Nonetheless, where, as here, "the validity of the antitrust claims [is] not so clear," no prima facie showing of a violation of the antitrust laws has been made, and the antitrust issues do not—despite the wealth of paper shed by the parties—"permeate the entire case," the court may not only direct that arbitrable issues proceed to arbitration, but that they do so first. See *N. V. Maatschappij v. A. O. Smith Corp.,* 532 F.2d 874, 876 (2 Cir. 1976); *Nederlandse Erts-Tankersmaatschappij v. Isbrandtsen Co.,* 339 F.2d 440 (2 Cir. 1964); *Black v. Econo-Car International,* 404 F.Supp. 600 (D.Mass.1975). A similar analysis applies to the concededly inarbitrable claim for exemplary damages pleaded in Count X. See Defs.' Mem. (filed 12/9/77), at 12.

Accordingly, we turn to plaintiffs' remaining claims.

■■■ The claim set forth in Count II, based on an alleged breach of fiduciary duty is arbitrable—to the extent it is asserted against ECI—because it obviously arises "out of" the covenants of the franchise agreements. Indeed, paragraph 53 of the amended complaint recites as follows:

"A fiduciary duty arose between ECI and Janmort as a result of the dominance of ECI over Janmort, the control exercised by ECI over Janmort, the trust and confidence placed by Janmort in ECI, the dependency by Janmort upon ECI, the relative financial position of the parties, the superior resources and expertise of ECI in the Vehicle Business [sic], the access Janmort is required to provide ECI to all of Janmort's confidential information, ECI's direct financial stake in Janmort's business and profitability, and the representations and warranties made by ECI to induce Janmort to enter into the franchise or franchisee relationship."

Count III is a claim for breach of contract against ECI only and requires no further discussion. Count IV charges that all defendants tortiously interfered with Janmort's contractual relationship with ECI. That claim as against ECI necessarily sounds in breach of contract rather than tort, however, since a party "cannot be guilty of *inducing* the breach of [its] own contract." *Ryan v. Brooklyn Eye & Ear Hospital*, 46 A.D.2d 87, 360 N.Y.S.2d 912, 916 (2d Dep't 1974). See generally *Diehl & Sons, Inc. v. International Harvester Co.*, 445 F.Supp. 282, 290–91 (E.D.N.Y.1978); *Wegman v. Dairylea Coop., Inc.*, 50 A.D.2d 108, 376 N.Y.S.2d 728, 734 (4th Dep't 1975). The claim set forth in Count V, fraud in the inducement of the franchise agreements, must also be regarded as predicated on breach of the underlying contracts, see *Wegman v. Dairylea Coop., Inc., supra*, 376 N.Y.S.2d at 734–35, and therefore squarely within the scope of the arbitration clauses. See *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Erving v. Virginia Squires Basketball Club, supra.* See generally *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402 (2 Cir. 1959), *cert. dismissed*, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

Plaintiffs concede that their claim for the recovery of *manufacturers' rebates* properly due to Janmort but allegedly converted by defendants, set forth in Court VI, *inter alia*, "arises out of the franchisor/franchisee relationship between ECI and plaintiffs." Plaintiffs' Mem. (filed 2/16/78), at 24. Hence, this claim, like the claim pleaded in Count II, is arbitrable. Claims of common law unconscionability, including those pleaded in Count VII, are also proper subjects for arbitration. See *Riccardi v. Modern Silver Lineri Supply Co.*, 45 A.D.2d 191, 356 N.Y.S.2d 872, 878 (1st Dep't 1974), *aff'd*, 36 N.Y.2d 945, 373 N.Y.S.2d 551, 335 N.E.2d 856 (1975). The claim against ECI for unjust enrichment, pleaded in Count VIII, is expressly predicated on ECI's alleged breach of its "fiduciary"—that is, contractual—duty accurately to bill Janmort for services rendered. Like the claims raised in Count II, the allegations of which are reincorporated in Count VIII, see paragraph 89, this claim is rooted in the franchise agreements and is, therefore, arbitrable.

Count IX is problematic, for usury claims are ordinarily deemed nonarbitrable. See, *e. g., Durst v. Abrash*, 22 A.D.2d 39, 253 N.Y.S.2d 351 (1st Dep't 1964) (Breitel, J.), *aff'd*, 17 N.Y.2d 445, 266 N.Y.S.2d 806, 213 N.E.2d 887 (1965). This claim, however, is based on charges assessed by ECI for late payment of periodic billings pursuant to a clause in each contract which provides for interest at a rate of "one and one-half (1½%), but not to exceed the highest *legal contract rate.*" Bronx-Westchester Agreement, ¶ 3(c); Palm Beach Agreement, ¶ 3(c) (it should be noted that these clauses, although identically numbered, do differ, but in respects not here material). In other words, the contract itself establishes the legal maximum as the highest rate of interest ECI may charge Janmort under the contract. No less important, the usury claim, whatever its merit, depends entirely on Kirschbaum's status as obligor under the franchise agreements. Accordingly, if ECI did indeed exact payments of interest in excess of that permitted by governing State law, Janmort would have a remedy under the contract (although arguably not to the exclusion of its remedies pursuant to State usury law). Under the circumstances, we think the better practice is to require presentation of the claim to the arbitrator in the first instance. Only if the remedy there should prove incomplete will it be necessary to decide whether plaintiffs have also pleaded a nonarbitrable usury claim. *Rosenblum v. Steiner*, 43 N.Y.2d 896, 403 N.Y.S.2d 716, 374 N.E.2d 610 (1978), cited by plaintiffs is hardly to the contrary, for there the Court of Appeals held that public policy does *not* preclude an arbitrator from considering a usury defense raised by a borrower when it is the borrower who has sought arbitration.

Accordingly, plaintiffs will be directed to submit to arbitration their claims pleaded in Counts II through IX of the amended complaint against ECI and arising out of the Bronx-Westchester and Palm Beach franchise agreements.

*Stay Pending Arbitration*

■ Although 9 U.S.C. § 3 empowers the court to stay arbitrable claims only[10] —here, all but plaintiffs' antitrust and exemplary damage claims against ECI—a federal district court "possesses the inherent power to stay a proceeding pending the outcome of related actions before a different tribunal." *Societe Nationale v. General Tire & Rubber Co.*, 430 F.Supp. 1332, 1334 (S.D.N.Y.1977), citing *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Hence, federal courts have not hesitated to stay the litigation of nonarbitrable claims until the conclusion of arbitration, provided that economies of time and effort for court and parties can thereby be achieved and that "the party seeking the stay can demonstrate that he will not hinder the arbitration, that the arbitration will be concluded within a reasonable time; and that the delay will not work an undue hardship on the party opposing the stay." *Societe Nationale, supra,* 430 F.Supp. at 1334. See *Nederlandse Erts-Tankersmaatschappij v. Isbrandtsen Co., supra,* 339 F.2d at 441. For clarity's sake, these factors will be taken up in reverse order.

■ First, undue hardship to plaintiffs is at worst a remote possibility, in view of our determination, explained more fully below, that they are entitled to preliminary relief. To avoid the prejudice they fear will result from separate arbitrations under the Bronx-Westchester and Palm Beach agreements because of ECI's accounting practices, Plaintiffs' Mem. (filed 2/16/78), at 35–36, the stay will be conditioned on ECI's consent to a single consolidated arbitration should plaintiffs so request. See generally *Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966, 975 (2 Cir. 1975). The court is also satisfied that

ECI will not interfere with the progress of arbitration proceedings; to assure expedition, plaintiffs will be permitted to move to vacate the stay should the arbitration not be completed within six months following entry of this order. See *Societe Nationale, supra,* 430 F.Supp. at 1334.

Finally, the court is of opinion that the demands of judicial economy and efficient utilization of the resources of court, counsel and parties will best be served by deferring further proceedings in this action until arbitration can be completed. While arbitration will not necessarily dispose of the many inarbitrable claims, it will certainly clarify and perhaps even simplify the remaining issues. Indeed, because plaintiffs' antitrust claims, as pleaded, turn largely on allegations that defendants have engaged in a pattern of conduct inconsistent with ECI's contractual obligations to Janmort, and therefore mirror the allegations upon which the claims set forth in Counts II through IX are predicated, we think the course of proceedings can only benefit from prior arbitration of the issues—including questions of contract interpretation and effect, as well as performance—arising from or out of the Bronx-Westchester and Palm Beach agreements. In particular, it is worth noting that apart from treble and exemplary damages, the relief sought in the inarbitrable counts is identical to that demanded in Counts II through IV.

Accordingly, ECI's motion for an order compelling plaintiffs to submit to arbitration their claims arising from or out of the Bronx-Westchester and Palm Beach franchise agreements is, to the extent indicated above, granted, on the condition that ECI will consent to a consolidated arbitration should plaintiffs so demand. Further proceedings in this action will be stayed pending arbitration, with the proviso that plaintiffs may move to vacate the stay should

---

**10.** 9 U.S.C. § 3 provides:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such

suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

arbitration not be completed within six months after the entry of this order.

*Preliminary Relief*

As noted above, shortly after commencing this action, Janmort moved for an order preliminarily enjoining ECI (1) from terminating its various franchise agreements with Janmort; (2) from publishing or in any way disseminating statements announcing termination of Janmort's franchises or indicating that Janmort is not an affiliate of the Econo-Car system; and (3) requiring ECI to fulfill its obligations under the agreements. The court has already indicated that this motion will be granted. The reasons for doing so follow.

 First, the fact that the action will be stayed pending the outcome of arbitration does not deprive the court of the power in the interim to preserve the *status quo ante.* Indeed, preliminary relief is particularly appropriate where, as here, "[a]rbitration may be futile . . . if the status quo is not preserved pending the arbitrator's determination." *Erving v. Virginia Squires Basketball Club*, 349 F.Supp. 716, 719 (E.D.N.Y.), aff'd, 468 F.2d 1064, 1067 (2 Cir. 1972). As Judge Weinfeld has aptly written:

> "The purpose of the Arbitration Act . . . ' * * * is simply to make the contracting party live up to his agreement * * *.' It would be an oddity in the law if the Court, after compelling a party to live up to his undertaking to arbitrate, had to stand idly by during the pendency of the arbitration which it has just directed and permit him to assert his 'right to breach a contract and to substitute payment of damages for non-performance.' The stay is an incident of the power to enforce the agreement to arbitrate."

*Albatross S.S. Co. v. Manning Bros.*, 95 F.Supp. 459, 463 (S.D.N.Y.1951) (quoting from the House Committee Report and from Holmes, Collected Legal Papers (1920), 167, 175). ECI's right to terminate

Janmort's Bronx-Westchester and Palm Beach franchises will obviously be the paramount issue addressed by the arbitrator, and thereafter this court will be called upon to determine the propriety of the purported termination of the Midtown-East franchise. Continuation of the Janmort outlets pending final resolution of this dispute is certainly a small price for ECI to pay for the stay of proceedings it has obtained in conjunction with this court's order directing plaintiffs to comply with ECI's demand for arbitration under two of the three franchise agreements.

 Second, plaintiffs have satisfied this circuit's tripartite test for injunctive relief, most recently expressed in *Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co.*, 604 F.2d 755 at 758 (2 Cir., 1979), and *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70 at 72 (2 Cir. 1979), which requires a showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." See *Caulfield v. Board of Education*, 583 F.2d 605, 610 (2 Cir. 1978); *Triebwasser & Katz v. American Telephone & Telegraph Co.*, 535 F.2d 1356 (2 Cir. 1976).

 In this circuit it is firmly settled that the loss or destruction of a going business constitutes irreparable harm, whether viewed as an injury not compensable in monetary terms, see, e. g., *Danielson v. Local 275*, 479 F.2d 1033, 1037 (2 Cir. 1973); *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2 Cir. 1970); *Miller Brewing Co. v. Carling O'Keefe Breweries*, 452 F.Supp. 429, 438 (W.D.N.Y.1978), or as one which cannot be reduced to monetary value with "sufficient accuracy to make damages an adequate substitute" for injunctive relief, *Ives Laboratories, Inc. v. Darby Drug Co., Inc.*, 601 F.2d 631 at 644, (2 Cir. 1979); see also *Buffalo Courier-Express, Inc. v.*

*Buffalo Evening News, Inc.*, 601 F.2d 48 at 56, (2 Cir. 1979). According to plaintiffs, Janmort is critically dependent upon its ECI affiliation, not only because the "Econo-Car" trademark and chain services—including national credit card, advertising and reservation systems—are an essential source of business, but also because such a connection is indispensable to financing the purchase of new vehicles. See Kirschbaum Aff. (9/28/77), at 23–24; Plaintiffs' Mem. (filed 10/3/77), at 3–4. Although there is some dispute about the number of Econo-Car outlets Janmort operates—Kirschbaum claims 12, Kirschbaum Aff., *supra*, at 4, while ECI's Director of Operations Development avers that it has only eight, Driscoll Aff. (filed 1/23/78), at ¶ 2—Kirschbaum's assertion that Janmort has over 300 vehicles and 53 employees is uncontested, Kirschbaum Aff., *supra* at 4, as is his averment that:

> "If the injunction is not obtained, based upon my experience in the industry, the ability to rent cars on a daily basis will be reduced to a point where Janmort will have virtually no ability to continue in business. We will lose cash flow, customers, we will be unable to support our overhead and payroll, we will be unable to meet our bank obligations, and it is likely the business will fold." *Id.* at 24.

We do not understand ECI seriously to argue to the contrary, despite its insistence that the dispute revolves solely about the state of Janmort's accounts on July 13 and September 20, 1977. See Defts.' Mem. (filed 1/23/78), at 5–6.

We are not unmindful that Janmort apparently does business under several banners in addition to Econo-Car's, including Ford Rent-A-Car, Red Carpet Rental, Inc., and Drive-in Style, all Ford operations according to Kirschbaum. See Kirschbaum Aff. (filed 2/16/78), at 19. Although the March 25, 1977, letter plainly authorizes Janmort to operate Ford Rent-A-Car outlets, and recognizes that it is doing so, defendants have never invoked Janmort's alternative source of custom as vitiating their

claim of irreparable harm, and, indeed, noted the fact for the first time in connection with their arbitration motion, and then only as an example of an arbitrable issue. See Gibbs Aff. (filed 1/23/78), at ¶ 30. No less important, defendants have from the inception of this lawsuit emphasized Janmort's precarious fiscal state, however unintentionally bolstering plaintiffs' claim that without its Econo-Car affiliation Janmort is not a viable business enterprise. See, *e. g.*, Hrg. tr. (9/30/77), at 9; Driscoll Aff. (filed 1/23/78), at ¶¶ 5, 10. Hence, this case is readily distinguishable from *Jackson Dairy, Inc. v. H. P. Hood & Sons, supra,* where plaintiff, a wholesale distributor of dairy products, alleged only "disruption of [its] sales and delivery relations with its customers," and not the total collapse of its business, in the absence of preliminary relief, and *Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co., supra,* where a musical instrument retailer attempted to forestall the loss of a profitable line. Compare *Jacobson & Co., Inc. v. Armstrong Cork Co.,* 548 F.2d 438 (2 Cir. 1977); *Interphoto Corp. v. Minolta Corp.,* 417 F.2d 621 (2 Cir. 1969).

Nor do we understand ECI to urge that plaintiffs have not shown fair grounds for litigation of their improper termination claims. In view of the nearly $30,000 disparity in the parties' computations, previously discussed, we cannot help but note defendants' concession that following Gelco's acquisition of ECI, erroneous billings and statements of account were generated to Janmort. See, *e. g.*, Defts.' Mem. (1/23/78), at 4–5, Shun Aff., *supra*, at ¶¶ 10, 13. Having concluded that the termination issue, at least with respect to two of the three franchise agreements, ought to be addressed by the arbitrator in the first instance, we are necessarily reluctant to address the merits of the dispute at this time. We might add only that here it seems particularly appropriate to treat ECI's application for an order compelling arbitration and staying proceedings as a clear concession that Janmort's claims are not frivolous and raise serious litigable questions. *Cf. Rosen-*

thal v. Emanuel, Deetjen & Co., 516 F.2d 325, 327 (2 Cir. 1975). Accordingly, we note only in passing that ECI's own accounts indicate that on September 16, 1977, Janmort's indebtedness for its New York operations was only $35.01, and that Janmort's check of that date for $3,750 was posted by ECI on September 23. Kirschbaum Aff. (filed 12/23/77), Exh. 2; Kirschbaum Aff. (filed 2/16/78), at 3–4 and Exh. 1. Compare Shun Aff. (filed 1/23/78), at 8; Gibbs Aff. (filed 1/23/78), at ¶ 21.

We are, of course, aware of ECI's contention that Janmort was some $4,937.89 in default on a series of promissory notes, executed by Brand Auto Rental, which it had assumed in connection with the assignment of the Bronx-Westchester franchise. See Shun Aff., supra, at 11; Gibbs Aff., supra, ¶ 21 & Exh. 3; Kirschbaum Aff. (2/16/78), at 6–8, and that a balance of $13,641.95 was owing on the Palm Beach account, see Gibbs Aff., supra, ¶ 21 & Exh. 1. Plaintiffs, however, maintain that the Brand notes were not due until October 1977, see Kirschbaum Aff., supra, at 6–8, and that the better part of the Palm Beach balance can be attributed to ECI's "misapplication" of two checks, for $5,000 and $4,960.99, respectively, tendered by Kirschbaum to ECI on March 23, 1977. Compare Schickler Aff. (9/28/77), Exh. E, and Kirschbaum Aff. (9/28/77), at 16–17, with DeNight Aff. (filed 1/23/78), ¶¶ 7–11, and Shun Aff., supra, ¶¶ 5–6, 8, 14, 19.

The balance of hardships remains to be considered. As Judge Friendly has only lately written:

"A 'balance of hardships tipping decidedly toward the party requesting the preliminary relief' must mean real hardship from the denial of relief pendente lite —not merely the showing of difficulty of measurement which may suffice to constitute 'irreparable damage' where a plaintiff shows probable success."

Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc., supra, 601 F.2d at 58.

Judge Friendly went on to note that the test would be met, at least in the case there before the court, by a showing that the party seeking preliminary relief "would be driven out of business" before a decision on the merits could be reached. Id. While we think the equities are necessarily more compelling where, as here, the party opposing interim relief has sought—and obtained— an order requiring prior arbitration of a portion of the claims asserted against it and temporarily staying litigation of the remainder, so that a less compelling demonstration of hardship ought to suffice, cf. Erving v. Virginia Squires Basketball Club, supra, we are also of opinion that plaintiffs have satisfied their burden under the second sub-prong of the Triebwasser-Hamilton Watch Co.[11]-Jackson Dairy test.

Most notably, defendants' voluminous papers are entirely devoid of even the barest suggestion that ECI (which has agreed to take no action pending the outcome of arbitration, see Hrg. tr. (12/23/77), at 20–21) will be prejudiced, let alone reduced to hardship, if Janmort is permitted to continue as an Econo-Car franchisee pending the completion of this lawsuit. See, e. g., Defts.' Mem. (filed 1/23/78), at 8–13. Even were we to treat this omission as the product of oversight, a thorough review of defendants' papers, construed liberally in their favor, reveals only that Janmort— whatever its business-getting capacity—is not an ideal franchisee because it does not always pay its bills promptly and without protest. See, e. g., DeNight Aff., supra, at ¶ 5, Driscoll Aff. (filed 1/23/78), at ¶ 7. The obvious response to ECI's concern is simply to require Janmort, as a condition of preliminary relief, to remain current on its franchise-related obligations, an arrangement that has proved effective thus far under the parties' consensual TRO.

Set against the minimal "hardship" to ECI is plaintiffs' undisputed claim that Janmort will likely founder if its Econo-Car franchises are terminated. The imbalance is, therefore, plain.

11. Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738 (2 Cir. 1953).

Accordingly, plaintiffs' motion for an order *pendente lite* enjoining ECI from discontinuing its franchise relationship with Janmort is granted, with the proviso that Janmort fully and timely satisfy its obligations to ECI as they accrue unless the court shall otherwise direct.[12]

12. Plaintiffs have also moved for an order adjudging ECI in contempt of the consensual TRO, originally entered by Judge Platt and thereafter "extended" by the undersigned, for (1) improperly listing Janmort's airport locations in the *Official Airlines Guide, North American Edition, Ground Transportation Services (March 1, 1978, Part 2)* ("OAG") and in ECI's *March-April Tariff Directory;* "double" billing Janmort for its October New York-area systems fees; (3) demanding payments totalling $9,937.89 for promissory notes due in October 1977; (4) withholding payment of credits due Janmort; and (5) failing to provide "national" advertising for Janmort's New York and Florida franchise areas.

"[T]hat courts have the inherent power to enforce compliance with their lawful orders through civil contempt" is beyond question. *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966). In contrast to the *penalties* for criminal contempt, which are imposed to vindicate the authority of the court, civil contempt sanctions are remedial, and "may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). See *United States v. Wendy,* 575 F.2d 1025, 1029 n. 13 (2 Cir. 1978); *Shakman v. Democratic Organization of Cook County,* 533 F.2d 344, 348–49 (7 Cir. 1976). Hence, the proponent of a civil contempt motion need not demonstrate that his adversary acted wilfully, although he does bear the burden of proving by clear and convincing evidence that the alleged contemnor has violated the court's decree. See *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949); *Shakman v. Democratic Organization, supra,* 533 F.2d at 351; *N.L.R.B. v. Local 282, International Brotherhood of Teamsters,* 428 F.2d 994, 1001–02 (2 Cir. 1970).

After carefully reviewing the voluminous record created on this motion by the parties, the court is of opinion that plaintiffs have failed to sustain their burden and that a good deal of the conduct of which they complain is in any event innocuous.

The March 1978 edition of the OAG was the first in which Econo-Car appeared. Hence,

Settle order on ten days notice.

SO ORDERED.

some difficulties were to be anticipated. While the forms provided by ECI to its franchisees could surely have been more informative, the fact remains that Janmort composed its own copy for the March edition and that ECI acted promptly thereafter to amend Janmort's listings and to eliminate objectionable material from those of other dealers. The so-called "double" billing was also an innocent error (for which both sides must share responsibility), caused no ascertainable harm, and was *sua sponte* rectified by ECI months before the contempt motion was noticed.

Second, ECI acted well within its rights when it demanded—and accepted—payment for apparently valid and mature promissory notes. Indeed, plaintiffs' contention that the court, by requiring Janmort, as a condition of the TRO, to remain "current" on its obligations for services rendered thereby relieved it of its other debts, is frivolous.

Finally, the court did not intend, by granting the TRO, to require ECI to alter its normal accounting procedures or to surrender its right to make day-to-day business decisions. On the contrary, the purpose of the TRO—like that of the preliminary injunction today granted—was to maintain the *status quo ante.* While it may be that ECI is required by its franchise agreements or otherwise to make immediate payment to Janmort of credit card charges and to conduct "national" advertising in New York and Florida, the TRO does not direct it to do so. Accordingly, we are bound to follow the settled rule that "[w]hen the question of contempt is raised, just as it is inadequate if the decree has merely referred to a statute, even though the statute clearly created the legal obligation which warranted the decree . . . so it is not enough for enforcement by contempt proceedings if the decree merely referred to a contract, even though the contract clearly created the legal obligation which warranted the decree." *H. K. Porter Co., Inc. v. National Friction Products Corp.,* 568 F.2d 24, 27–28 (7 Cir. 1977) (citations omitted). See Rule 65(d), F.R.Civ.P.; *Sanders v. Airline Pilots Association,* 473 F.2d 244, 247 (2 Cir. 1972). Plaintiffs' more appropriate course is to amend or supplement their complaint. Their motion for an order adjudging ECI in contempt of the court's order of October 5, 1977, is, therefore, denied in all respects.