MEADOWS INDEMNITY COMPANY LIMITED, Plaintiff,

v.

BACCALA & SHOOP INSURANCE SERVICES, INC., G.L. Hodson & Sons, Inc., Corroon & Black of Illinois, Inc., Corroon & Black Corporation, Puritan Insurance Company, Insco Limited, National Excess Insurance Company, the Mutual Fire, Marine and Inland Insurance Company, Old Republic Insurance Company, Nutmeg Insurance Company, Twin City Fire Insurance Company, Hartford Casualty Insurance Company, Ltd., Pacific Insurance Company, Ltd. and Hartford Fire Insurance Company, Defendants.

No. CV 89–4289.

United States District Court,
E.D. New York.

March 29, 1991.

Anderson Costigan (A. Broadus Anderson III, Sheldon P. Pressman, of counsel), New York City, for plaintiff.

Parker Chapin Flattau & Klimpl (Alvin M. Stein, of counsel), New York City, for defendants Baccala & Shoop, G.L. Hodson, Corroon & Black, and Nat. Excess.

Buchalter, Nemer, Fields & Younger (Vincent J. Vitkowsky, of counsel), New York City, for defendants Insco, Nutmeg, Twin City, Hartford and Pacific.

Frank Kehrwald, Overland Park, Kan., for defendant Puritan Ins. Co.

Fleming, Merrill & Roth (Thomas G. Roth, of counsel), Newark, N.J., for defendant Old Republic.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

Defendants Insco Limited, Old Republic Insurance Company, Nutmeg Insurance Co., Twin City Fire Insurance Co., Hartford Casualty Insurance Co., Pacific Insurance Co., and Hartford Fire Insurance Co. (collectively the "Issuing Company defendants") move to stay this action in favor of arbitration based on the arbitration clauses in their reinsurance contracts with plaintiff, Meadows Indemnity Company Limited ("Meadows"). Defendants Baccala & Shoop Insurance Services, G.L. Hodson and Sons, Inc., Corroon & Black of Illinois, Inc., Corroon & Black Corporation, and National Excess Insurance Co. (collectively the "Managing Agent defendants"), move to stay the claims against them pending the

arbitration between the Issuing Company defendants and Meadows or, alternatively, to dismiss the complaint pursuant to Fed.R. Civ.P. 12(b)(1) (lack of subject matter jurisdiction), 12(b)(6) (failure to state a claim upon which relief can be granted), and failure to satisfy the pleading requirements of Rule 9(b). Meadows opposes the motions.

## BACKGROUND

This suit arises out of Meadows' participation with the Issuing Company defendants in a "reinsurance pool" from 1979 to 1984. Reinsurance is a transaction whereby an insurance company agrees to indemnify another insurance company against all or part of the loss which the latter may sustain under policies which it has issued. Reinsurance provides the means by which insurance companies spread among other companies the risks they have underwritten. Through reinsurance in such a "pool," the ultimate loss liability on a particular policy or loss is spread among a number of insurance market entities.

The following facts are alleged by Meadows in the complaint. Meadows is an insurance company organized and existing under the laws of Guernsey.[1] Meadows is a wholly owned subsidiary of Gould, Inc., which is headquartered in Ohio.

The Managing Agent defendants, as intermediaries, established and managed a reinsurance pool for the Issuing Company defendants and other primary insurers (the "Pool"). Meadows engaged Corroon & Black of Illinois to provide consulting services in connection with Meadows' entry into the reinsurance business. The Managing Agent defendants, primarily Corroon & Black Corporation, provided information and advice to Meadows inducing Meadows to contract with the Issuing Company defendants into the Pool and to renew such reinsurance contracts. The initial information and subsequent renewal information consistently indicated that the Pool was acquiring profitable business in accordance with the stated goals, and that the Pool was well managed by Baccala & Shoop Insurance Services. Meadows and the Issuing Company defendants executed thirty-four reinsurance contracts between 1979 and 1984.

Meadows alleges that, unbeknownst to it, the Managing Agent defendants managed the Pool for the purpose of reaping risk-free commissions to the detriment of the reinsurers, and without regard to their fiduciary obligations to manage the Pool in the best interests of all of the Pool participants, including Meadows. The Managing Agent defendants allegedly manipulated the underwriting and administration of the Pool to the detriment of Meadows, and failed to disclose information material to Meadows' decision whether or not to renew its yearly contracts with the other members of the Pool.

Meadows alleges that when the Issuing Company defendants became primary insurers in the Pool, they manipulated the underwriting of the Pool for their own ends, without the knowledge and to the detriment of Meadows and its co-reinsurers. In addition, the Issuing Company defendants, working in concert with the Managing Agent defendants, allegedly developed or became apprised of information material to Meadows' decision to renew its participation in the Pool, which they failed to disclose to Meadows, thereby inducing Meadows' yearly execution of Pool contracts.

Meadows alleges the following causes of action against defendants:

(1) violation of and conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(a), (c), (d) ("RICO");
(2) civil conspiracy;
(3) fraud in the inducement;
(4) breach of fiduciary duties;
(5) malpractice;
(6) negligence;
(7) unjust enrichment;
(8) breach of contract as against Corroon & Black of Illinois.

All thirty-four reinsurance contracts between Meadows and the Issuing Company

---

1. Guernsey is located in the Channel Islands and is under the control of the United Kingdom.

defendants executed between 1979 and 1984 contain arbitration clauses. However, there are two versions of the arbitration clause. Thirty-two of the contracts contain the following arbitration clause:

> As a condition precedent to any right of action hereunder, any dispute arising out of this contract shall be submitted to the decision of a board of arbitration composed of two arbitrators and an umpire....

Two of the contracts [2] provide:

> If any dispute shall arise between the reinsured and the reinsurer, either before or after the termination of this contract, with reference to the interpretation of this contract or the rights of either party with respect to any transactions under this contract, the dispute shall be referred to three arbitrators, one to be chosen by each party and the third by the two so chosen....

The Issuing Company defendants assert that the court should stay the claims against them and order arbitration pursuant to the arbitration clauses in the contracts between them and Meadows. The Managing Agent defendants contend that the court, in the exercise of its discretion, should also stay this action as to them (though they are not parties to the contracts containing the arbitration clauses) because the claims asserted against the Issuing Company defendants are the same claims asserted against the Managing Agent defendants.

Meadows argues that the whole controversy centers around the fraud cause of action which it claims is not an arbitrable subject matter, under the law of Guernsey. Alternatively, Meadows asserts that its fraud, RICO and civil conspiracy claims are not within the scope of the arbitration clauses. Meadows also argues that if the court finds the claims against the Issuing Company defendants arbitrable, the court, in the exercise of its discretion, should not stay the action as against the Managing Agent defendants.

Although Meadows contends that its fraud, RICO, and civil conspiracy claims (collectively the "fraud claim") are not arbitrable subject matters or within the scope of the arbitration clauses, Meadows apparently concedes that its remaining claims for breach of fiduciary duty, malpractice, negligence, and unjust enrichment are arbitrable and within the scope of the agreement to arbitrate. Even were we to agree with Meadows that the fraud claim should not be arbitrated, we would still stay the action pending arbitration of the other claims. *Nederlandse Erts–Tankersmaatschappij v. Isbrandtsen Co.*, 339 F.2d 440, 441 (2d Cir.1964) (district court has discretion whether to stay nonarbitrable claims pending arbitration of the arbitrable claims); *Landis v. North America Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936) (same); *Moses H. Cone, Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23, 103 S.Ct. 927, 939 n. 23, 74 L.Ed.2d 765 (1983) (same). In any event, as discussed below we conclude that Meadows' fraud claim against the Issuing Company defendants is arbitrable and within the scope of the arbitration agreements.

## DISCUSSION

### I. The Issuing Company Defendants

"[F]ederal policy strongly favors arbitration as an alternative dispute resolution process." *David L. Threlkeld & Co. v. Metallegesellschaft Ltd.*, 923 F.2d 245, 248 (2d Cir.1991). "The policy in favor of arbitration is even stronger in the context of international business transactions." *Threlkeld*, 923 F.2d at 248; *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 629–31, 105 S.Ct. 3346, 3355–56, 87 L.Ed.2d 444 (1985); *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 516–18, 94 S.Ct. 2449, 2455–57, 41 L.Ed.2d 270 (1974). The enforcement of international arbitral agreements "promotes the smooth flow of international transactions by removing the threats and uncertainty of time-consuming and expensive litigation. The parties may agree in advance as to how their disputes will be expeditiously and inexpensively resolved should their business

---

**2.** The 1979 and 1980 contracts between Meadows and defendant Insco Limited.

relationship run sour." *Threlkeld,* 923 F.2d at 248; *Scherk,* 417 U.S. at 516–17, 94 S.Ct. at 2455–56.

■ The question of arbitrability is a two-fold inquiry: whether there is an enforceable agreement to arbitrate a subject matter capable of settlement by arbitration, and if so, whether the scope of that agreement encompasses the claim. *Threlkeld,* 923 F.2d at 249; *Fleck v. E.F. Hutton Group, Inc.,* 891 F.2d 1047, 1050 (2d Cir. 1989).

A. Enforceable Agreement to Arbitrate Subject Matter Capable of Settlement by Arbitration

Meadows argues that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38 (June 10, 1958) (the "Convention"), applies to the arbitration clauses, and that under the Convention Meadows' fraud claim is not a "subject matter capable of settlement by arbitration" (Convention Art. II(1)), and the arbitration agreement itself is "null and void" (Convention Art. II(3)).

■ The United States is a signatory to the Convention. In addition, Congress implemented the Convention through Chapter Two of the Federal Arbitration Act, 9 U.S.C. §§ 201–208. The Convention is "a specific unit of the Arbitration Act." *Threlkeld,* 923 F.2d at 250.[3]

■ We must first determine whether the Convention applies to the instant arbitration clauses. Article II of the Convention provides:

(1) Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

\* \* \* \* \* \*

(3) The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

Furthermore, Section 202 of the Arbitration Act implements the Convention by providing:

An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

Section 208 of the Arbitration Act provides that Chapter One of the Arbitration Act (9 U.S.C. §§ 1–14) applies to actions and proceedings brought under Chapter Two (9 U.S.C. §§ 201–208) to the extent it is not in conflict with Chapter Two or the Convention.

The Convention, in addition to the other portions of the Arbitration Act, applies to the arbitration clauses because they arose out of commercial contractual legal relationships not entirely between citizens of

---

**3.** The Arbitration Act applies in federal court to suits which relate to contracts involving interstate or international commerce. *Threlkeld,* 923 F.2d at 249. Meadows concedes that the rein-surance contracts involve international commercial relationships. (Opposing Memorandum at p. 28, n. 30, 30).

the United States. Arbitration Act §§ 202, 208; Convention Art. II(1).

Meadows asserts that its fraud claim is not a "subject matter capable of settlement by arbitration" under Article II(1) and that the arbitration clauses are "null and void" under Article II(3). In examining these two exceptions the court is guided by the principle that "[t]his treaty—to which the United States is a signatory—makes it clear that the liberal federal arbitration policy 'applies with special force in the field of international commerce.'" *Threlkeld*, 923 F.2d at 248 (quoting *Mitsubishi*, 473 U.S. at 631, 105 S.Ct. at 3356).[4]

### Subject Matter Capable of Settlement by Arbitration (Article II(1))

■ Although it is well settled federal arbitration law that a fraud in the inducement claim is arbitrable unless the arbitration clause itself was allegedly fraudulently induced, *Prima Paint Corp. v. Flood & Conklin Manuf. Co.*, 388 U.S. 395, 403–05, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967); *Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096, 1103 (2d Cir.1987), Meadows argues that its fraud claim is not a "subject matter capable of settlement of arbitration" under Article II(1) of the Convention because fraud claims allegedly are not arbitrable under the law of Guernsey where Meadows is incorporated.

There is little case law addressing the issue of what country's law governs whether a subject matter is "capable of settlement by arbitration" under Article II(1) of the Convention. Meadows points to Article V(2)(a) of the Convention, which governs the enforcement of arbitral awards, and argues that the law of the country where enforcement of the award will be sought (which Meadows claims is Guernsey) governs whether the subject matter is arbitrable under Article II(1).

Article V(2) provides that the country where enforcement is sought need not recognize and enforce an arbitral award if the subject matter is not arbitrable under its

own laws or if enforcement of the award would be contrary to its own public policy:

Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

According to Meadows, in determining whether a claim is a "subject matter capable of settlement by arbitration" under Article II(1) the court should look to the law of the country where enforcement of the arbitration award will be sought (which Meadows claims is Guernsey) pursuant to Article V's language addressing the enforcement of arbitration awards. However, the absence in Article II of any reference to the law where enforcement will be sought and the presence of such language in Article V may compel the opposite conclusion, i.e., that the delegates to the Convention deliberately excluded any such reference from Article II and intended that the law where enforcement is sought is dispositive only of the question whether to enforce an arbitral award and not the question whether to order arbitration under Article II. In fact, the German delegate to the Convention noted the omission in Article II(3) of any reference to the law where enforcement will be sought in determining whether an arbitration agreement is "null and void," and proposed that the article be amended so that arbitral agreements would be related to arbitral awards that were enforceable. The German proposal was voted upon and rejected. G. Haight *Convention on the Recognition and Enforcement of Foreign Arbitral Awards: Summary Analysis of Record of United Nations Conference*, May/June 1958 at 27–28. *See Rhone Mediterranee Compagnia*

4. Meadows agrees that the reinsurance contracts involve international commerce. (Opposing Memorandum at p. 28 n. 30, 30).

*Francese v. Lauro*, 555 F.Supp. 481, 485 (D.V.I.1982) ("the Convention's mandate to refer parties to arbitration is not necessarily negated because an arbitral award would be unenforceable under a foreign forum's law"), *aff'd*, 712 F.2d 50 (3d Cir. 1983).

In *Mitsubishi* the circuit court adopted the reasoning now urged upon us by Meadows and held that antitrust claims were not a "subject matter capable of settlement by arbitration" under Article II(1) because any award, were such to be issued, could not be enforced in the United States. 723 F.2d 155, 162–66 (1st Cir.1983). The United States Supreme Court reversed, holding that the emphatic federal policy in favor of arbitral dispute resolution, the purpose of the Convention and Chapter Two of the Arbitration Act to encourage the recognition and enforcement of commercial arbitration agreements, and the necessity of subordinating domestic notions of arbitrability to the international policy favoring arbitration required arbitration of the antitrust claims. 473 U.S. at 628–40, 105 S.Ct. at 3355–61. The Court did not specifically reject or adopt the circuit court's reasoning. The Court refused to find subject matter exemptions to Article II(1) in the absence of a specific direction by Congress to do so:

> Doubtless, Congress may specify categories of claims it wishes to reserve for decision by our own courts without contravening this Nation's obligations under the Convention. But we decline to subvert the spirit of the United States' accession to the Convention by recognizing subject-matter exceptions where Congress has not expressly directed the courts to do so.

*Mitsubishi*, 473 U.S. at 639 n. 21, 105 S.Ct. at 3360 n. 21.

Although the Supreme Court in *Mitsubishi* held that a nonarbitrable subject matter under United States law is (absent a specific direction by Congress) still a "subject matter capable of settlement by arbitration" under Article II(1), even where enforcement of the award would be in the United States, the Court did not address the situation where the claimed subject matter exception is grounded in a *foreign* country's law, and the Court did not delineate what subject matters are *not* "capable of settlement by arbitration" under Article II(1). Counsel have not cited any cases holding that a subject matter was not capable of settlement by arbitration under Article II(1).

We find that reference to the domestic laws of only one country, even the country where enforcement of the arbitral award will be sought, does not resolve whether a claim is "capable of settlement by arbitration" under Article II(1) of the Convention. *Cf. Mitsubishi*, 473 U.S. at 639, 105 S.Ct. at 3360 ("national courts [must] subordinate domestic notions of arbitrability to the international policy favoring commercial arbitration"); *Scherk*, 417 U.S. at 520 n. 15, 94 S.Ct. at 2457 n. 15 ("the delegates to the Convention voiced frequent concern that courts of signatory countries in which an agreement to arbitrate is sought to be enforced should not be permitted to decline enforcement of such agreements on the basis of parochial views of their desirability or in a manner that would diminish the mutually binding nature of the agreements"). The determination of whether a type of claim is "not capable of settlement by arbitration" under Article II(1) must be made on an international scale, with reference to the laws of the countries party to the Convention. *Cf. Mitsubishi, supra; Scherk, supra; Rhone*, 712 F.2d at 53 (whether the arbitration agreement is "null and void" under Article II(3) turns on whether the agreement is "subject to an *internationally recognized* defense such as duress, mistake, fraud, or waiver") (emphasis added); *Tennessee Imports, Inc. v. Filippi*, 745 F.Supp. 1314, 1322 (M.D.Tenn.1990) (same); *Oriental Commercial and Shipping v. Rosseel*, 609 F.Supp. 75, 77–78 (S.D.N.Y.1985) (same). The purpose of the Convention, to encourage the enforcement of commercial arbitration agreements, and the federal policy in favor of arbitral dispute resolution require that the subject matter exception of Article II(1) is extremely narrow.

Meadows merely points to Guernsey law in support of its contention that its fraud claim is not "capable of settlement by arbitration" under Article II(1). This does not establish that, on an international scale, fraud claims are not arbitrable.[5]

In addition, even if we were to accept Meadows' position that the law of the country where enforcement of the award will be sought determines whether claims are arbitrable under Article II(1), there has been no showing that enforcement of the arbitration award would be in Guernsey. Meadows is seeking over $17 million in compensatory damages and $100 million in punitive damages from the Issuing Company defendants, which are headquartered in the United States. Should Meadows prevail in arbitration, enforcement of the award would presumably be against assets of defendants in the United States. Thus, the United States, not Guernsey (where Meadows is incorporated) would be the forum for the enforcement of Meadows' claims.[6]

In light of the emphatic federal policy embodied in the Arbitration Act in favor of arbitral dispute resolution, and the "goal of the Convention ... to promote the enforcement of arbitral agreements in contracts involving international commerce so as to facilitate international business transactions on the whole," *Threlkeld*, 923 F.2d at 250; *Scherk*, 417 U.S. at 520 n. 15, 94 S.Ct. at 2457 n. 15, we find that Meadows' claims, including its fraud claim, are "capable of settlement by arbitration" under Article II(1) of the Convention.

### Null and Void (Article II(3))

■ Under Article II(3) of the Convention the court may not order arbitration if it finds that the arbitration agreement is "null and void, inoperative or incapable of being performed." This is a narrow exception limited to cases in which the arbitra-

tion clause itself (1) is "subject to an internationally recognized defense such as duress, mistake, fraud, or waiver" or (2) "contravenes fundamental policies of the forum state." *Rhone*, 712 F.2d at 53; *Tennessee Imports*, 745 F.Supp. at 1322; *Oriental Commercial and Shipping*, 609 F.Supp. at 77–78. *See Marchetto v. DeKalb Genetics Corp.*, 711 F.Supp. 936, 939 (N.D.Ill.1989). There has been no showing that the arbitration clauses are within this narrow "null and void" exception of Article II(3).

### B. Scope of the Arbitration Agreement

■ The next question is whether Meadows' fraud claim falls within the scope of the arbitration agreement. While parties may not be compelled to submit a commercial dispute to arbitration unless they have contracted to do so, federal policy "requires us to construe arbitration clauses as broadly as possible," *S.A. Mineracao Dea Trindade–Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir.1984), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Threlkeld*, 923 F.2d at 248 (quoting *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. at 941–42). "[L]anguage excluding certain disputes from arbitration must be 'clear and unambiguous' or 'unmistakably clear' and ... arbitration should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 847 (2d Cir.1987) (quoting *S.A. Mineracao*, 745 F.2d at 194); *Threlkeld*, 923 F.2d at 950.

Thirty-two of the thirty-four Pool reinsurance contracts state that "[a]s a condition precedent to any right of action hereunder, any dispute arising out of this contract shall be submitted" to arbitration.

---

**5.** As discussed above, fraud claims are arbitrable under federal arbitration law unless the arbitration clause itself was allegedly fraudulently induced. *Prima Paint*, 388 U.S. at 403–05, 87 S.Ct. at 1806; *Manning*, 833 F.2d at 1103.

**6.** Furthermore, if defendants were to seek sums allegedly due from Meadows and were success-

ful in arbitration, it is not clear that enforcement of the award would be in Guernsey. Defendants could seize Meadows' assets in the United States or in other countries, or seek enforcement against Meadows' parent corporation, Gould, Inc., which is headquartered in Ohio.

Two of the Pool reinsurance contracts provide that "if any dispute shall arise between the reinsured and the reinsurer, either before or after the termination of this contract, with reference to the interpretation of this contract or the rights of either party with respect to any transactions under this contract, the dispute shall be referred" to arbitration.

In *In re Kinoshita & Co.*, 287 F.2d 951, 952–53 (2d Cir.1961), the Second Circuit found that a clause requiring arbitration of "any dispute or difference ... aris[ing] under" the contract was not sufficiently broad to encompass a claim of fraudulent inducement.

In *S.A. Mineracao*, 745 F.2d at 193–94, the Second Circuit re-examined *Kinoshita.* The court found that *Kinoshita* is inconsistent with the federal policy favoring arbitration. In addition, the court observed that in *Scherk*, 417 U.S. at 508, 94 S.Ct. at 2452, the Supreme Court held that an arbitration clause requiring arbitration of "any controversy or claim ... aris[ing] out of this agreement" covered the plaintiffs' fraudulent misrepresentation claim (though the scope of the arbitration clause was not raised by the parties). However, rather than overrule *Kinoshita*, the *S.A. Mineracao* court "confine[d] *Kinoshita* to its precise facts." *S.A. Mineracao*, 745 F.2d at 194. The court found that the arbitration clause providing for arbitration of "any question or dispute aris[ing] or occur[ring] under" the contract was not within the "precise facts" of *Kinoshita's* clause requiring arbitration of "any dispute or difference aris[ing] under" the contract. *Id.*

Similarly, in *Genesco*, 815 F.2d at 854, the Second Circuit found that the arbitration clause requiring arbitration of "all claims and disputes of whatever nature arising under the contract" was distin-

guishable from *Kinoshita.*[7] Although the court again declined the invitation to explicitly overrule *Kinoshita*, it reiterated that *Kinoshita* was inconsistent with the federal policy and that it was limited to its own precise facts. *Id.* The court also hinted, by its citation to *Scherk*, that the authority of *Kinoshita* is questionable.[8]

The decisions in other circuits, since the confinement of *Kinoshita* to its own facts by *S.A. Mineracao* and *Genesco*, call the continued authority of *Kinoshita* into even further doubt. *See Mar–Len of La., Inc. v. Parsons–Gilbane*, 773 F.2d 633, 637 (5th Cir.1985) (arbitration clause requiring arbitration of "any dispute arising under" the contract or any dispute "with respect to the interpretation or performance of" the contract included plaintiff's economic duress claim); *Peoples Security Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 813–14 (4th Cir.1989) (arbitration clause requiring arbitration of any issue "believed to constitute a breach or violation of" the contract included plaintiff's fraud in the inducement claim).[9]

Assuming *Kinoshita*, though confined to its facts, is still viable in this circuit, the agreement of the parties to arbitrate in the instant case does not fall within the precise facts of *Kinoshita.* Of the thirty-four Pool contracts signed by Meadows, two contracts require arbitration of "any dispute ... either before or after termination of this contract, with reference to the interpretation of this contract or the rights of either party with respect to any transactions under this contract." This clause is clearly different from and broader than the clause in *Kinoshita.* The other Pool contracts requiring arbitration of "any dispute arising *out of*" the contract bears a potentially broader reading than the clause in *Kinoshita* providing for arbitration of "any

---

7. The district court had found such language to be the equivalent of the *Kinoshita* language.

8. The court stated:

    Because the instant case is distinguishable from the *Kinoshita* clause, we need not discuss the continued viability of *Kinoshita. See Scherk*, 417 U.S. at 508, 94 S.Ct. at 2451 (clause requiring arbitration of "any contro-

versy or claim ... aris[ing] out of this agreement" held to cover fraudulent misrepresentation claim).

*Genesco*, 815 F.2d at 854 n. 6.

9. The goal of *S.A. Mineracao* was to provide stable and predictable background law for parties to arrange for arbitration of their disputes. This goal is undermined by differing results depending on what circuit the suit is brought in.

dispute or difference ... aris[ing] *under*" the agreement.

In addition, the two versions of arbitration clauses in Meadows' reinsurance Pool contracts can be read together. The "arising out of" arbitration clause should be read in light of the even broader arbitration clause contained in Meadows' two other Pool contracts. It is doubtful that Meadows and the Issuing Company defendants intended to arbitrate only fraud claims with regard to two of the Pool contracts and not fraud claims relating to the other Pool contracts. Meadows' contracts with defendants for Meadows' participation in the Pool should be read together rather than separately. We cannot "read each of these [arbitration] provisions in a vacuum." *Threlkeld*, 923 F.2d at 251.

"[A]ny ambiguity surrounding the clause's language '*should* be resolved in favor of arbitrability.'" *Genesco*, 815 F.2d at 854 (quoting *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. at 941). "[A]rbitration should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Genesco*, 815 F.2d at 847; *Threlkeld*, 923 F.2d at 250. We find that Meadows' claims, including its fraud claim, fall within the scope of Meadows' agreement to arbitrate. *S.A. Mineracao*, 745 F.2d at 194–95; *Genesco*, 815 F.2d at 854; *Scherk*, 417 U.S. at 508, 94 S.Ct. at 2451; *Mar–Len*, 773 F.2d at 637; *Peoples Security*, 867 F.2d at 813–14.

## II. *The Managing Agent Defendants*

■ The decision whether to stay the action as to the Managing Agent defendants, pending arbitration between Meadows and the Issuing Company defendants, is within this court's discretion. *Nederlandse*, 339 F.2d at 441; *Landis*, 299 U.S. at 255, 57 S.Ct. at 166.

We believe the arbitration of Meadows' claims against the Issuing Company defendants might at least partially determine issues forming the basis of the claims asserted against the Managing Agent defendants, *e.g.*, *Lawson Fabrics, Inc. v. Akzo-na, Inc.*, 355 F.Supp. 1146, 1151 (S.D.N.Y.), *aff'd*, 486 F.2d 1394 (2d Cir.1973); *Societe Nationale Pour La Recherche v. General Tire & Rubber Co.*, 430 F.Supp. 1332 (S.D.N.Y.1977), and may provide the court with insight into the issues of fact and law involved in the claims against the Managing Agent defendants. *E.g.*, *Hikers Indus. v. William Stuart Indus.*, 640 F.Supp. 175, 178 (S.D.N.Y.1986); *Janmort Leasing, Inc. v. Econo–Car Int'l, Inc.*, 475 F.Supp. 1282, 1293 (E.D.N.Y.1979). A stay of the claims as against the Managing Agent defendants would promote judicial economy, avoidance of confusion and possible inconsistent results, *American Home Assurance Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961, 964 (4th Cir.1980), and would not work undue hardship or prejudice against Meadows. *Nederlandse*, 339 F.2d at 442. Accordingly, we order the stay of Meadows' claims against the Managing Agent defendants and the defenses thereto pending the arbitration of Meadows' claims against the Issuing Company defendants.

### ORDER

Meadows and the Issuing Company defendants are directed to submit their respective claims and defenses to arbitration pursuant to the arbitration clauses in the reinsurance contracts.

Meadows' claims against the Managing Agent defendants and the defenses thereto are stayed pending the arbitration of Meadows' claims against the Issuing Company defendants.

SO ORDERED.