ST. PAUL FIRE & MARINE
INSURANCE COMPANY,
Plaintiff,

v.

EMPLOYERS REINSURANCE
CORPORATION,
Defendant.

No. 94 Civ. 9283 (SS).

United States District Court,
S.D. New York.

Jan. 4, 1996.

Rosenman & Colin, New York City (John F. Finnegan, of counsel), for Plaintiff.

Weil, Gotshal & Manges, Washington, DC (Peter D. Isakoff, of counsel), for Defendant.

### OPINION AND ORDER

SOTOMAYOR, District Judge.

Defendant Employers Reinsurance Corporation moves, pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, for a

stay of this action pending arbitration. For the reasons discussed below, defendant's motion is **GRANTED**.

### BACKGROUND

This motion arises from a dispute over two reinsurance contracts (the "Treaties") between plaintiff St. Paul Fire & Marine Insurance Company ("St. Paul") and defendant Employers Reinsurance Corporation ("ERC"). St. Paul, the reinsurer, maintains its principal place of business in New York City. ERC's principal place of business is in Overland Park, Kansas.

The Treaties, in force from January 1, 1991 to December 31, 1993, indemnified ERC against the risks of certain losses. Each Treaty contained an arbitration agreement (the "Arbitration Clause"), which provided in relevant part:

> As a condition precedent to any right of action hereunder, *any dispute arising out of this Agreement* shall be submitted to the decision of a board of arbitration composed of two arbitrators and an umpire, meeting in Overland Park, Kansas unless otherwise mutually agreed by the Corporation [ERC] and the Retrocessionaire [St. Paul] (emphasis added).

After the Treaties expired, ERC submitted loss claims of approximately $21 million. That estimate has since grown to $35 million. (Mem. of Law in Support of Def.'s Motion at 2.)

In December, 1994, St. Paul filed a Complaint in this Court seeking to rescind the Treaties on the grounds that they had been induced by fraud. The Complaint alleged that ERC had misrepresented certain material facts relating to the risks being reinsured, and that St. Paul had relied on ERC's representations in agreeing to provide the reinsurance coverage.

The Complaint outlined four claims for relief. The first three claims alleged respectively that ERC had intentionally, negligently or innocently misrepresented certain

material facts relevant to the risks of loss covered by the Treaties. The fourth claim alleged that ERC had breached the contract by failing to give St. Paul timely notice of its claims.

Defendant ERC now moves to stay this litigation on the ground that the Treaties' broad Arbitration Clause requires this dispute to be resolved in arbitration.

### DISCUSSION

The questions presented are: (1) whether the issues raised in the Complaint are arbitrable, and if so, (2) whether the Arbitration Clause is enforceable as a matter of law. Plaintiff St. Paul contends that three of its four claims are not encompassed by the Arbitration Clause and that, in any case, the Arbitration Clause is unenforceable under Kansas law.

### I. ARBITRABILITY OF PLAINTIFF'S CLAIMS

In general, written agreements to arbitrate are governed by the Federal Arbitration Act (the "FAA"), which encodes a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).[1] Federal courts are directed to enforce arbitration agreements rigorously. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242–43, 84 L.Ed.2d 158 (1985). Accordingly, my first task must be to determine whether the parties agreed to arbitrate the issues before me. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985). In assessing the scope of the parties' agreement, I am required to apply the federal substantive law of arbitrability and to resolve any doubts in favor of arbitration. *Id.* (quoting *Moses H. Cone*, 460 U.S. at 24, 103 S.Ct. at 941).

---

1. Section 2 of the Act provides that a written arbitration clause in any "contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the Act provides for a stay of proceedings in any case where a court is satisfied that the issue before it is arbitrable under the agreement. 9 U.S.C. § 3.

■ In the instant case, the Arbitration Clause provides that "any dispute arising out of this Agreement" shall go to arbitration. ERC contends that this language is broad enough to embrace all four claims asserted in the Complaint. St. Paul concedes that its breach of contract claim is arbitrable, but asserts that its "fraudulent inducement claims" (sic) are not arbitrable because they do not "arise out of" the agreement. (Pl.'s Mem. of Law at 21.)[2] The question, then, is whether fraudulent inducement claims fall within the scope of the Arbitration Clause.

St. Paul relies essentially on a single case, *In re Kinoshita & Co.*, 287 F.2d 951 (2d Cir.1961), in which the Second Circuit held that a similar arbitration clause was too narrow to include claims of fraudulent inducement. The clause at issue in *Kinoshita* required arbitration of "any dispute or difference [that] should arise under this Charter." *Id.* at 952. The Second Circuit held that such language referred only to claims involving contract interpretation and matters of performance. *Id.* at 953.

St. Paul's reliance on *Kinoshita* is misplaced. Since 1961, both the Supreme Court and the Second Circuit have taken an increasingly broad view of such phrases as "arising under" and "arising out of" in arbitration agreements, and have concluded that fraudulent inducement claims generally fall within their scope.[3] The Supreme Court, interpreting an arbitration clause virtually identical to the one before me, found that a fraud claim was arbitrable where the contract required arbitration of "any controversy or claim [that] shall arise out of this agreement or the breach thereof." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519–20 & n. 14, 94 S.Ct. 2449, 2457 & n. 14, 41 L.Ed.2d 270 (1974).[4] The Second Circuit, following

*Scherk*, held that fraudulent inducement claims are arbitrable unless the arbitration clause clearly excludes such claims. *S.A. Mineracao Da Trindade–Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 195 (2d Cir.1984) (fraudulent inducement claim arbitrable where clause required arbitration of "any question or dispute aris[ing] or occur[ring] under" the agreement) (hereinafter "*Samitri*"). The Second Circuit reinforced this holding in *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 854 (2d Cir.1987) (fraudulent inducement claim arbitrable where clause required arbitration of "all claims and disputes of whatever nature arising under this contract"). In both Second Circuit cases, moreover, the court grappled with *Kinoshita* and left it in tatters. While declining to overrule the case outright, the court confined *Kinoshita* to "its precise facts" and noted that it was inconsistent with the federal policy favoring arbitration. *Samitri*, 745 F.2d at 194; *Genesco*, 815 F.2d at 854. As a result, the authority of *Kinoshita* is highly questionable in this Circuit. *See also Meadows Indem. Co. v. Baccala & Shoop Ins. Servs., Inc.*, 760 F.Supp. 1036, 1043–45 (E.D.N.Y.1991) (Mishler, J.) (fraudulent inducement claim arbitrable where clause required arbitration of "any dispute arising out of this contract") (questioning continued authority of *Kinoshita*).

I conclude that the instant arbitration agreement is broad enough to include plaintiff's fraudulent inducement claims. As the court observed in *Samitri*, "[L]anguage excluding certain disputes from arbitration must be 'clear and unambiguous' or 'unmistakably clear' and . . . arbitration should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers

---

2. It is unclear what St. Paul means by "fraudulent inducement claims" in the plural. The Complaint asserts only one claim of fraud: the claim that ERC deliberately misrepresented certain facts to plaintiff. The claims of negligent and innocent misrepresentation do not constitute allegations of fraud. For the sake of argument, however, I will assume that St. Paul is referring here to all three misrepresentation claims.

3. The sole exception is when a fraudulent inducement claim is directed to the arbitration clause itself, as opposed to the contract as a

whole. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–06, 87 S.Ct. 1801, 1805–07, 18 L.Ed.2d 1270 (1967). St. Paul, however, makes no such allegation here.

4. Although the claim was asserted under Rule 10(b)(5) of the Securities Exchange Act of 1934, it was essentially a fraudulent inducement claim in that plaintiff contended that its contract had been induced through defendant's fraudulent misrepresentations.

the asserted dispute.'" 745 F.2d at 194–95 (citations omitted). The instant Arbitration Clause does not clearly exclude fraudulent inducement claims. Indeed, the clause here provides for arbitration of "any dispute arising out of" the agreement. As Judge Mishler observed in *Meadows Indemnity,* 760 F.Supp. at 1044–45, with respect to a clause identical to the one before me, the phrase "arising out of" is capable of a potentially broader interpretation than the phrase "aris[ing] under," which was used in *Kinoshita.*[5] Because I am directed to resolve any doubts in favor of arbitration, *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. at 941–42, the conclusion is inescapable that all of St. Paul's claims are subject to arbitration.

## II. ENFORCEABILITY OF THE ARBITRATION CLAUSE

I next turn to whether the Arbitration Clause is enforceable under federal and state law. St. Paul contends that this dispute is governed by Kansas law and that under Kansas law the Arbitration Clause is unenforceable. ERC asserts that New York law applies and that under New York law the clause is enforceable under the Federal Arbitration Act. The Treaties themselves contain no choice of law provision, but the parties agree that if New York law controls, the arbitration agreement is enforceable. I conclude that New York law applies. In any event, the laws of both New York and Kansas compel the same result.

[4] A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits, including that state's choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). New York courts apply an "interest analysis" to choice of law issues involving contractual disputes. *Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 46 n. 6 (2d Cir.1993). This approach provides that "the law of the juris-

diction having the greatest interest in the litigation will be applied." *Intercontinental Planning, Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 382, 300 N.Y.S.2d 817, 248 N.E.2d 576 (1969). In conducting an "interest analysis," the court looks to such factors as the place of contracting, where the contract was negotiated, where the contract was to be performed, the location of the subject matter of the contract, and the domicile and place of business of the parties. *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 137 (2d Cir.1991).

Applying these principles to the instant case, I find that New York has a substantial interest in this dispute. The Treaties were executed in New York; St. Paul's principal place of business is in New York; and St. Paul's obligations under the contract were surely to be performed, at least in part, at its principal place of business in New York. Kansas also has an interest in the litigation. The Treaties were negotiated by a brokerage agency in Kansas as well as by the two parties; defendant's principal place of business is in Kansas; and the parties chose Kansas as the situs of arbitration.

St. Paul contends that the situs of arbitration alone must determine the choice of law outcome: "Courts have consistently held that absent an express choice of law provision, agreements to arbitrate should be governed by the law of the jurisdiction in which the arbitration proceeding is to be conducted." (Pl.'s Mem. of Law at 6.) This statement, however, is accurate only when applied to arbitration proceedings that are already in progress. In *Federated Rural Elec. Ins. Co. v. Nationwide Mut. Ins. Co.,* 874 F.Supp. 1204 (D.Kan.1995), a Kansas district court applied Ohio law—not, as St. Paul avers, because Ohio was the chosen site of arbitration, but because Kansas follows the principle of *lex loci contractus,* the law of the state where the contract was made, and the contract at issue was executed in Ohio. *Id.* at

---

5. In *Samitri,* the court counseled parties to use the exact language of the *Kinoshita* clause if they expect the clause to be construed along *Kinoshita*'s narrow lines. 745 F.2d at 194. As noted, the instant clause does not contain the precise language of the *Kinoshita* clause. I find the distinction meaningless and hope the Second Circuit will reconsider explicitly overturning *Kinoshita* at its next opportunity.

1207.[6] In *Bergesen d.y. A/S v. Lindholm,* 760 F.Supp. 976 (D.Conn.1991), the court found that English law governed the shipping charter agreements—not solely, as St. Paul asserts, because the situs of arbitration was London, but because other factors also mitigated in favor of English law. Finally, St. Paul cites the inapposite *Splosna Plovba of Piran v. Agrelak S.S. Corp.,* 381 F.Supp. 1368 (S.D.N.Y.1974) (Knapp, J.), which involved an arbitration proceeding that had already taken place in London. In that case, Judge Knapp found that by agreeing to arbitrate in London, "the parties implicitly agreed that British law should apply *to the arbitration,* since it is a recognized principle that the law of the country *in which the arbitration proceeding takes place* governs, unless the parties to such arbitration agree to the adoption of laws of a different jurisdiction." *Splosna Plovba,* 381 F.Supp. at 1370 (emphasis added) (citation omitted).

In the instant case, however, no arbitration proceeding has taken place in the parties' chosen site of Overland Park, Kansas, for the simple reason that St. Paul has decided to litigate instead in New York. Having thus invoked the powers of this Court, St. Paul cannot now argue that New York has no interest in the outcome. New York has an undisputed interest in enforcing valid contracts executed and performed within its borders. St. Paul's suggestion to the contrary is particularly disingenuous given its other statements to this Court. In its Complaint, for example, St. Paul asserts that "a substantial part of the events and omissions giving rise to the claim occurred within this district." (Cmplt. at 2.) In its motion papers, St. Paul even seeks the protections of New York law, stating: "We do not believe that Kansas law governs all issues in this action and reserve the right to argue ... that New York has 'the most significant contacts' with respect to issues raised by St. Paul's fraudulent inducement claims." (Pl.'s Mem. of Law at 8, n. 7.) St. Paul cannot have it both ways. Either New York has the most significant contacts with this litigation or it does not.

I am fully persuaded that New York's interest in this litigation outweighs that of Kansas. The elements of execution and performance are directly tied to the purpose of a contract as a whole. The same cannot be said of the mere location in which the parties have agreed to arbitrate—a location which, if all goes well, will prove irrelevant. Furthermore, my finding does no violence to Kansas public policy. Although for many years Kansas law provided that arbitration clauses contained in reinsurance contracts were invalid, *see infra* at n. 7, that provision did not reflect "the type of strong public policy that would bar application of another jurisdiction's contrary law." *Federated Rural,* 874 F.Supp. at 1207–08. Moreover, the Kansas statute was recently amended to make such arbitration clauses valid and enforceable. Because Kansas policy is now identical to New York's on the subject of arbitration clauses in reinsurance contracts, Kansas' interest in the instant matter is amply protected.

█ Even if Kansas law applied, however, the result would favor arbitration. St. Paul vigorously disputes this notion, insisting that the previous version of the Kansas Arbitration Act applies in this case because that version was in effect when the Treaties were executed in 1990.[7] Although St. Paul is cor-

---

**6.** Moreover, the principle of *lex loci contractus* would have a similar effect in the instant case. If St. Paul had filed its Complaint in Kansas, the Kansas court would be bound to apply New York law because the Treaties were executed in New York.

**7.** The previous version of the Kansas Arbitration Act provided in pertinent part:

  5–401. Validity of arbitration agreement.

    (a) A written agreement to submit any existing controversy to arbitration is valid, enforceable and irrevocable except upon such grounds as exist at law or in equity for the revocation of any contract.

    (b) Except as provided in subsection (c), *a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties* is valid, enforceable and irrevocable except upon such grounds as exist at law or in equity for the revocation of any contract.

    (c) The provisions of subsection (b) *shall not apply to:* (1) *contracts of insurance;* (2) contracts between an employer and employee, or their respective representatives; or (3) any provision of a contract providing for arbitration of a claim in tort.

Kan.Stat.Ann. § 5–401 (1994) (emphasis added).

rect that the previous version of the Act did render the Arbitration Clause invalid,[8] the Act has since been amended, effective July 1, 1995. The Act now provides that arbitration clauses in reinsurance contracts are "valid, enforceable and irrevocable."[9] The question is whether the amendment applies retroactively, which in turn raises the issue of whether the right to a judicial forum is a substantive right or merely a procedural one.

■ St. Paul, arguing that the amendment applies only prospectively, cites a venerable principle of contract law: that "contracts must be interpreted in light of the law which existed at the time of their execution." (Pl.'s Mem. of Law at 16–17.) This principle, however, exists to protect the reasonable expectations of the parties. St. Paul freely negotiated a written agreement to arbitrate. It cannot also claim to have relied on a Kansas law that made that very agreement unenforceable. Moreover, St. Paul again misconstrues the case law on which it relies. In *Norfolk & Western Ry. Co. v. American Train Dispatchers Ass'n*, 499 U.S. 117, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991), for example, the full quote to which St. Paul refers is, "Laws which subsist at the time *and place* of the making of a contract, and *where it is to be performed*, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms." *Id.* at 130, 111 S.Ct. at 1164 (emphasis added) (citations omitted). Under the holding of that case, the instant Treaties incorporated the law of New York, not Kansas. St. Paul also mangles *Steele v. Latimer*, 214 Kan. 329, 521 P.2d 304, 310 (1974), in which the Kansas Supreme Court noted the "general rule that contracting parties are presumed to contract in reference to the existing law." The opin-

ion continues: "Thus, it is commonly said that all existing applicable or relevant and valid [laws] at the time a contract is made become a part of it and must be read into it just as if any express provision to the effect were inserted therein, *except where the contract discloses a contrary intention....*" *Id.* (emphasis added) (citations omitted). Here, the contract disclosed an intention that was directly contrary to Kansas law: the intention to arbitrate. Thus, St. Paul cannot rely on *Steele* or on contract theory to rescue it from its contractual obligations.

■ St. Paul next appeals to a settled principle of statutory construction: that a statutory amendment may not be given retroactive effect if to do so would violate the substantive or vested rights of a party. In Kansas, as in other jurisdictions, the general rule is that "a statute will operate prospectively unless its language clearly indicates that the legislature intended that it operate retrospectively." *Chamberlain v. Schmutz Mfg. Co.*, 532 F.Supp. 588, 589 (D.Kan.1982) (citations omitted). The rule is modified, however, "where the statutory change is merely procedural or remedial in nature and does not affect the substantive rights of the parties." *Id.* A procedural statute may be applied retrospectively without regard to its effective date. *Id.* at 589–90. *See also NAL II, Ltd. v. Tonkin*, 705 F.Supp. 522, 527 (D.Kan.1989).

St. Paul asserts that the right to have one's day in court is without exception a substantive right. St. Paul *had* a substantive right to litigate its disputes—until it chose arbitration. Once St. Paul made a contractual agreement to resolve its disputes in an alternate forum, it did not retain a vested

---

8. Under the McCarran–Ferguson Act, 15 U.S.C. § 1011 et seq., state laws regulating the "business of insurance" supersede conflicting federal law, including the Federal Arbitration Act: Section 5–401 of the Kansas Arbitration Act regulates the business of insurance, including reinsurance. *See Stephens v. American Int'l Ins. Co.*, 66 F.3d 41, 44 (2d Cir.1995); *Mutual Reinsurance Bureau v. Great Plains Mut. Ins. Co.*, 969 F.2d 931, 933 (10th Cir.1992). Therefore, as long as the old version of § 5–401 was in effect, it preempted the FAA and invalidated any arbitration provision in a reinsurance contract. *Mutual Reinsurance* at 933.

9. Effective July 1, 1995, the statute provides in pertinent part:

(c) The provisions of subsection (b) shall not apply to: (1) Contracts of insurance, *except for those contracts between insurance companies, including reinsurance contracts;* (2) contracts between an employer and employee, or their respective representatives; or (3) any provision of a contract providing for arbitration of a claim in tort.

Kan.Stat.Ann. § 5–401 (1995) (emphasis added).

right to litigate them, too. Substantive legal rights are equally protected both in arbitration and in the courts. As the U.S. Supreme Court has observed:

> By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.

*Mitsubishi Motors,* 473 U.S. at 628, 105 S.Ct. at 3354 (favoring arbitration of antitrust claim raised under Sherman Act).[10]

In short, the current Kansas Arbitration affects only a procedural right and therefore, the Act applies retroactively because the parties' substantive rights remain amply protected. St. Paul never had a vested right in the provisions of the procedural laws of Kansas—or of New York, for that matter. If St. Paul had wanted to ensure its right to a judicial forum, it could have done so by contract. Instead of formalizing such a desire in writing, however, it expressed a clear preference for arbitration. St. Paul cannot now claim that it suffers any harm by being required to live by the terms of its own agreement.

### CONCLUSION

For the foregoing reasons, defendant's Motion is granted and this action is stayed pending arbitration. Furthermore, because all of the issues raised in the Complaint are arbitrable, this case need not remain on the Court's active calendar. Hence, the Clerk of the Court is directed to close this matter administratively with leave to either party to restore the case to the active calendar if the need arises after completion of the arbitration.

**SO ORDERED.**

---

10. When the Supreme Court overruled *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), for example, it held that claims asserted under the 1933 Securities Act were arbitrable and that this new rule would apply retroactively. *Rodriguez de Quijas v. Shearson/American Express,* 490 U.S. 477, 485–86, 109 S.Ct. 1917, 1922–23, 104 L.Ed.2d 526 (1989) ("[R]esort to the arbitration process does not inherently undermine any of the substantive rights" under Securities Act).

Similarly, the Supreme Court's ruling in *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 233, 238, 107 S.Ct. 2332, 2341, 2343–44, 96 L.Ed.2d 185 (1987), holding that claims brought under the 1934 Securities Exchange Act were arbitrable, was applied retroactively by the lower courts. *See, e.g., Noble v. Drexel, Burnham, Lambert, Inc.,* 823 F.2d 849, 851 (5th Cir.1987) ("*McMahon* alters only the forum for resolving this dispute and not [plaintiff's] substantive rights."); *Ketchum v. Almahurst Bloodstock IV,* 685 F.Supp. 786, 790 (D.Kan.1988) (quoting *Noble* ).